

# DECLARATIONS

HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603

(646) 452-2353

**About This Policy: This is a Claims-Made Policy, coverage is limited to those Claims first made during the Policy Period or any applicable Discovery Period.**

**The Insurer does not assume a duty to defend unless expressly provided for in a Coverage Part.  When the Insurer does not assume the duty to defend it will advance defense costs in excess of the applicable Retention, subject to the terms of this Policy.  Defense Costs are included within, serve to reduce and may completely exhaust the applicable Limits of Liability.  Defense Costs shall also reduce the  applicable Retention.**

**Please review this Policy carefully and discuss its terms, conditions and exclusions with your insurance broker or**

| Broker No.: | US 0000346 | | RT Specialty (Kansas City) |
|---|---|---|---|
| Policy No.: | UVA1455136.18 | | 1100 Walnut St., Suite 3200 |
| Renewal of: | UVA1455136.17 | | Kansas City, Missouri 64106 |

**Private Company Management Liability Policy**

1.  Named Entity:  Primary Color Systems Corporation

    Address:  265 Briggs Ave
    Costa Mesa, California 92626-4511

2.  Policy period:  Inception date: 07/01/2018    Expiration date: 07/01/2019

    Both dates at 12:01 A.M. (Standard Time) at the address of the Named Entity.

3.  Policy Aggregate Limit of  $ 3,000,000

4.  Coverage Summary

| Coverage Part | Coverage Part Limit of Liability | Separate Limit or Shared Limit | Retention | Continuity Date | Premium |
|---|---|---|---|---|---|
| Directors & Officers Liability  (DO) | $ 1,000,000 | Separate | $ 25,000 | 07/01/12 | $ 4,449.00 |
| Employment  Practices Liability  (EPLI) | $ 1,000,000 | Separate | $ 75,000 | 07/01/14 | $ 25,167.00 |
| Fiduciary  Liability(FLI) | $ 1,000,000 | Separate | $ 0 | 07/01/14 | $ 1,195.00 |
| Employed  Lawyers Liability  (ELAW) | N/A | | | | |

If "N/A" appears in the Coverage Part Limit of Liability column for any of the above Coverage Parts, such Coverage Part was not purchased and no coverage is provided under this Policy with respect to this Coverage Part.

5.  Total Premium:  $ 30,811.00

    Premium attributed to TRIA  $ 309.00

6(a)  Reputation Loss Limit:  $ 50,000

6(b)  Derivative Demand Limit:  $ 250,000

6(c)  Additional Executive Limit:  $ 500,000

| 7. | Notice of Claim to: | Hiscox ⏐ Management Liability Claims c/o Christopher McNulty<br>520 Madison Avenue, 32nd Floor New York, NY 10022<br>Fax - 212-922-9652 ⏐ Email - d&oclaims@hiscox.com |
|---|---|---|
| 8. | Attachments: | (1) E4104.1. California Amendatory Endorsement<br>(2) E3830.1. Professional E&O Exclusion<br>(3) E9997.4. Policyholder Disclosure Notice of Terrorism Insurance Coverage<br>(4) E7018.1. Coverage Amendatory Endorsement<br>(5) E4215.1. Amend Reporting and Notice Provision Endorsement (180 Days A<br>(6) E4219.1. Amend Definition of Application Endorsement (Last 12 Months)<br>(7) E4216.1. Increase Additional Executive Limit of Liability Endorsement [D&O]<br>(8) E3958.2. Extradition Costs Coverage Endorsement [D&O]<br>(9) E4222.1. TCPA Defense Costs Endorsement [D&O]<br>(10) E4221.1. WARN Act Defense Costs Endorsement<br>(11) E3959.2. Immigration Proceeding Coverage [D&O]<br>(12) E4213.1. Retention Reduction Incentive Endorsement (90/10) [EPLI]<br>(13) E4211.1. Add Defense-Only Coverage for Settlor Liability Endorsement<br>(14) E4218.1. Increase Voluntary Compliance Limit of Liability Endorsement<br>(15) E4217.1. Increase HIPAA Sublimit Endorsement [FLI]<br>(16) E4220.1. Specific Civil Money Penalties Sublimit Endorsement [FLI]<br>(17) E3822.1. Nuclear Energy Exclusion<br>(18) E3969.1. Wage & Hour Claim Sublimit - Defense Only Endorsement |

IN WITNESS WHEREOF, the Insurer indicated above has caused this Policy to be signed by its President and Secretary, but this Policy shall not be effective unless also signed by our duly authorized representative.

President

Secretary

Authorized Representative

06/30/2018

Date



# ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency.  OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons.  OFAC has also identified Sanctioned Countries.  A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries.  Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person.  Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional.  You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.



# Don't wait!

Get complimentary legal advice and risk management services now.

Hiscox has partnered with the law firm **Littler Mendelson** to offer a risk management tool for policyholders: HR Help

### What is LittlerHR Help?

LittlerHR Help is a risk management service for Hiscox EPLI policyholders. Its web portal contains a variety of HR resources/forms, legal information, and analysis. Hiscox policyholders can also correspond directly with Littler lawyers to help them stay compliant.

### How to access LittlerHR Help

Hiscox EPLI policyholders can register by visiting www.LittlerHRhelp.com and entering their Hiscox EPLI policy number.  More than one account can be assigned to a company, as long as email addresses are unique.

### Benefits to Hiscox EPLI policyholders

- No cost for risk management tools and legal advice
- Online and email access to legal experts at Littler
- Employment law updates, newsletters and related publications
- Compendium of online employment law resources: sample federal and state employment policies, practices, and human resources sample forms
- State and national employment law summaries and reference materials
- 50 state surveys on various employment law essentials
- Complimentary registration to Littler's nationwide breakfast briefing series
- Complimentary access to Littler's webinars and podcasts
- Discounted rates for various Littler events

### About Littler Mendelson

Littler Mendelson (Littler) is the largest global employment and labor law practice with more than 1,000 attorneys in over 60 offices worldwide. Littler represents management in all aspects of employment and labor law, and has served as a single source solution provider to the global employer community for over 70 years.



## Private Company Management Liability Insurance Policy
General Terms and Conditions

In consideration of the premium charged, and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

**I. Terms and Conditions**   Except for the terms and conditions appearing in these **General Terms and Conditions**, the terms and conditions of each **Coverage Part** shall only apply to that particular **Coverage Part** and in no way shall be construed to apply to any other **Coverage Part**. If any provision in these **General Terms and Conditions** is inconsistent or in conflict with the terms and conditions of any **Coverage Part**, then any defined term referenced in these **General Terms and Conditions** but defined in a **Coverage Part** shall, for purposes of coverage under that **Coverage Part**, have the meaning set forth in that **Coverage Part**.

**II. Definitions**   A.   **Affiliate** means any:

(i)   entity, other than a **Subsidiary**, which the **Named Entity** or any **Subsidiary** controls or otherwise has the ability to direct the financial or managerial decisions of such entity, whether through the operation of law, oral or written contract or agreement, membership, charter, articles of incorporation or by-law provisions; or

(ii)   entity, other than a **Subsidiary**, which is granted by oral or written contract the right to control the financial or managerial decisions of the **Named Entity** or any **Subsidiary**;

provided, however, such coverage as may be provided under this Policy for any entity described in subparagraphs (i) and (ii) of this Definition shall be limited solely to **Wrongful Acts** occurring in the course of the exercise of such control of financial or managerial decisions.

B.   **Application** means the signed application for the Policy, including any attachments and other materials or information submitted in conjunction with the signed application. The **Application** shall be deemed attached to and part of this Policy. If this Policy is a renewal or replacement of a previous policy or policies issued by the **Insurer**, all signed applications and other materials that were attached to and part of those previous policies shall also be considered part of the **Application** for this Policy. With respect to the **FLI Coverage Part** (if purchased), **Application** shall also mean any public documents filed by the **Named Entity** or any **Subsidiary** with any federal, state, local or foreign regulatory agency.

C.   **Company** means: (1) the **Named Entity**; (2) any **Subsidiary** thereof; and (3) any **Affiliate** thereof listed by endorsement to this Policy, but solely with respect to the **Coverage Part(s)** indicated on such endorsement. In the event a bankruptcy proceeding shall be instituted by or against a **Company**, the term **Company** shall also mean the resulting debtor-in-possession (or equivalent status outside the United States of America), if any, but only for acts on behalf of a **Company**.

**Company** does not include and coverage shall not extend under any **Coverage Part** for any **Subsidiary** or **Affiliate**, or an **Individual Insured** of such **Subsidiary** or **Affiliate**, for any **Wrongful Act** committed, attempted, or allegedly committed or attempted, during any time when such entity was not a **Subsidiary** or **Affiliate**.



# Private Company Management Liability Insurance Policy
General Terms and Conditions

D.  **Continuity Date** means the date set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) as applicable for each **Coverage Part** purchased.

E.  **Coverage Part** means each **Coverage Part** that is purchased by the **Insured** as set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

F.  **Coverage Part Limit of Liability** means the **Coverage Part Limit of Liability** set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

G.  **Discovery Period** means **Discovery Period** as that term is defined in Clause VIII. of these **General Terms and Conditions** and as set forth by endorsement to this Policy.

H.  **Domestic Partner** means a person legally recognized as a domestic or civil union partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by a **Company**.

I.  **Full Annual Premium** means:

(i)  with regard to a canceled or non-renewed policy, the total annual premium charged for this Policy; or

(ii)  with regard to a canceled or non-renewed **Coverage Part**, the total annual premium charged for such **Coverage Part**.

J.  **Insurer** means the insurance company set forth in the Declarations.

K.  **Limit of Liability** means any and all of the following (including any sublimit made part thereof) as applicable to this Policy and **Coverage Part** thereof: (i) the **Policy Aggregate Limit of Liability**; (ii) each **Coverage Part Limit of Liability**; (iii) the **Shared Limit(s) of Liability**; and (iv) each **Separate Limit of Liability**.

L.  **Management Control** means: (i) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or (ii) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

M.  **Named Entity** means the entity set forth in Item 1. of the Declarations.

N.  **Policy Aggregate Limit of Liability** means the **Policy Aggregate Limit of Liability** set forth in Item 3. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

O.  **Policy Period** means the period of time from the inception date set forth in Item 2. of the Declarations to the earlier of the expiration date set forth in Item 2. of the Declarations or the effective date of cancellation of this Policy.

P.  **Related Wrongful Act(s)** means **Wrongful Act(s)** which are the same, repeated or continuous, or **Wrongful Act(s)** which arise from a common causal connection



# Private Company Management Liability Insurance Policy
General Terms and Conditions

or cause the same or related damages, or a common nexus or nucleus of facts. **Claims** can allege **Related Wrongful Act(s)** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

Q. **Separate Limit of Liability** means the applicable **Separate Limit of Liability** (to the extent elected for a **Coverage Part**) set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

R. **Shared Limit of Liability** means the **Shared Limit of Liability** (to the extent elected for a **Coverage Part**) set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

S. **Subsidiary** means:

   (i)   any for-profit entity, whose securities are not publicly traded, of which the **Named Entity** has or had **Management Control** ("**Controlled Entity**") either directly or indirectly through one or more other **Controlled Entities**; and

   (ii)  any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by a **Company**.

   Notwithstanding the foregoing, coverage afforded under this Policy with respect to a **Claim** made against any **Subsidiary** or any **Individual Insureds** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that the **Named Entity** obtained **Management Control** of such **Subsidiary** and prior to the time that such **Named Entity** ceased to have **Management Control** of such **Subsidiary**.

T. **Wrongful Act** shall have the same meaning set forth in each applicable **Coverage Part**.

**III. Spouses, Estates, and Legal Representatives**

Subject otherwise to the terms, conditions and limitations of these **General Terms and Conditions** and any applicable **Coverage Part**, coverage shall extend to **Loss** arising from any **Claim** for the **Wrongful Acts** of an **Individual Insured** made against:

A. the estates, heirs or legal representatives of deceased **Individual Insureds**, and the legal representatives of **Individual Insureds** in the event of such **Individual Insured's** incompetency, insolvency or bankruptcy, provided such persons were **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; or

B. the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or **Domestic Partner** of an **Individual Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse or **Domestic Partner**, or property transferred from the **Individual Insured** to the spouse or **Domestic Partner**; provided, however, this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse or **Domestic Partner**, subject to the Policy's terms, conditions and Exclusions.



## Private Company Management Liability Insurance Policy
General Terms and Conditions

**IV. Limits of Liability**

Regardless of the number of **Claims** made during the **Policy Period** or **Discovery Period** (if applicable), or any **Claim** deemed to be made during the **Policy Period** or **Discovery Period** pursuant to Clause VI.B. or VI.C., the maximum the **Insurer** shall be liable to pay for all covered **Loss** (including **Defense Costs**) under this Policy shall be as follows:

A.   The **Policy Aggregate Limit of Liability** shall be the maximum amount for all **Loss** under the Policy for any and all **Coverage Parts**.

B.   The **Coverage Part Limit of Liability** shall be the maximum amount for all **Loss** under the respective **Coverage Part** for which such amount is designated.

Subject to subparagraphs C. or D. below, a **Coverage Part Limit of Liability** may either be a **Shared Limit of Liability** or a **Separate Limit of Liability**, depending upon how designated in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

C.   With respect to each **Coverage Part Limit of Liability** designated in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) as part of a **Shared Limit of Liability**:

The **Shared Limit of Liability** shall be the maximum amount for all **Loss** under any and all **Coverage Parts** set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) as part thereof, regardless of any amounts remaining under a participating **Coverage Part Limit of Liability**.  The **Shared Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability**.

D.   With respect to each **Coverage Part Limit of Liability** designated in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) as a **Separate Limit of Liability**:

The **Separate Limit of Liability** shall be the maximum amount for all **Loss** under the respective **Coverage Part** for which such amount is designated.  The **Separate Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability**.

**V. Retention**

The Retentions set forth in the Declarations are separate Retentions pertaining only to the applicable **Coverage Part** for which they are set forth in the Declarations.  The application of a Retention under one **Coverage Part** shall not reduce the Retention under any other **Coverage Part**.

In the event a **Claim** triggers a Retention in multiple **Coverage Parts**, then the following shall apply:

A.   with regard to **Loss** which is payable under any **Coverage Part** which is subject to a **Separate Limit of Liability**, the Retention applicable to such **Loss** pursuant to the Retention Clause of such **Coverage Part** (or pursuant to any applicable endorsement) shall apply separately to such **Loss**, and the applicable Retention for such **Coverage Part** shall not be reduced by payments of **Loss** made towards the Retention required under any other **Coverage Part**; and

B.   with regard to **Loss** which is payable under any **Coverage Part** which is subject to a **Shared Limit of Liability**, the highest applicable Retention of any **Coverage**



# Private Company Management Liability Insurance Policy
## General Terms and Conditions

**Part** triggered under such **Shared Limit of Liability** shall be deemed the Retention applicable to **Loss** arising from such **Claim**.

**VI. Reporting and Notice**

Notice hereunder shall be given in writing at the address set forth in Item 7. of the Declarations. (and Item 6 of the Common Declaration if issued as a package policy) Notice shall reference the policy number set forth in the Declarations, as well as the **Coverage Part(s)** under which the **Claim** is being noticed.  If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

With respect to all **Coverage Parts**, the following shall apply:

A.   The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** as soon as practicable.

B.   If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause VI.A. above, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged in the **Claim** of which such notice has been given, shall be considered made at the time such notice was originally given pursuant to Clause VI.A. above.

C.   If during the **Policy Period** or the **Discovery Period** (if applicable) the **Insured(s)** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insured(s)** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was originally reported.

D.   Any matter which could involve the payment of **Reputation Loss** under the **D&O Coverage Part** shall be reported to the **Insurer** in the same manner as a **Claim** under Clause VI.A. above.

E.   Any matter which could involve the payment of **Voluntary Compliance Loss** under the **FLI Coverage Part** shall be reported to the **Insurer** in the same manner as a **Claim** under Clause VI.A. above.

The **Insured(s)** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the **Insurer** such information, assistance and cooperation as the **Insurer** may reasonably require, and shall include in any notice under Clause VI.A., B., C., D. or E. above a description of the **Claim** or circumstances, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the **Claim** or circumstances.



# Private Company Management Liability Insurance Policy
General Terms and Conditions

| | |
|---|---|
| **VII. Cancellation** | This Policy or any individual **Coverage Part** may be canceled by the **Named Entity** at any time by either surrendering or mailing written notice to the **Insurer** or its authorized agent stating: (i) which **Coverage Part(s)** is/are to be canceled or that the entire Policy is to be canceled; and (ii) when thereafter such cancellation shall be effective.  In no event shall such cancellation be effective prior to the **Insurer's** receipt of such notice or such surrender. |
| | This Policy may be canceled by or on the behalf of the **Insurer** only in the event of non-payment of premium by the **Insured**.  In the event of non-payment of premium by the **Insured**, the **Insurer** may cancel this Policy by written notice stating when, not less than fifteen (15) days thereafter, the cancellation shall be effective.  The mailing of such notice as aforesaid shall be sufficient proof of notice.  The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. |
| | If the Policy or any **Coverage Part** shall be canceled by the **Named Entity**, the **Insurer** shall retain the short rate proportion of the applicable premium herein. |
| | If the Policy is canceled by the **Insurer**, the **Insurer** shall retain the pro rata proportion of the applicable premium herein. |
| | Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. |
| | If the period of limitation relating to the giving of notice as set forth above is also set forth in any law controlling the construction thereof, the period set forth above shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law. |
| **VIII. Discovery Period** | A.  **Cancellation or Non-Renewal** |
| | If the Policy or any **Coverage Part** is either cancelled or not renewed for any reason other than non-payment of premium, the **Named Entity** shall have the right to purchase a **Discovery Period** for a length of time indicated by endorsement to this Policy, subject to the following: |
| | (i)  The premium for the purchased **Discovery Period** shall be the **Full Annual Premium** multiplied by the applicable percentage amount set forth by endorsement to this Policy.  If no such percentage is set forth, or the percentage is set forth as "to be determined," then the premium for such **Discovery Period** shall be an amount as the **Insurer** may reasonably decide. |
| | (ii)  Unless notice of election and the premium contemplated above are received by the **Insurer** within thirty (30) days of the cancellation or non-renewal date, the **Insured's** rights contained in this Clause shall lapse. |
| | (iii)  The **Insured** shall have the right to give the **Insurer** written notice of **Claims** first made against any **Insured** during the **Discovery Period**, but only for **Wrongful Acts** occurring: (1) in the event of a cancellation, prior to the termination date for the Policy or **Coverage Part**; or (2) in the event of a nonrenewal, prior to the end of the **Policy Period**. |
| | (iv)  Notwithstanding the foregoing, the **Discovery Period** shall not apply to a |



# Private Company Management Liability Insurance Policy
General Terms and Conditions

**Reputation Risk Event** occurring during the **Discovery Period**.

B.    **Change in Control**

If there is a **Change in Control** as defined in Clause IX. of these **General Terms and Conditions**, the **Named Entity** shall have the right within thirty (30) days before the end of the **Policy Period** to request an offer from the **Insurer** of a **Discovery Period** for a length of time that does not exceed those lengths offered by endorsement to this Policy per subparagraph A. above and subject to such terms, conditions and premium as the **Insurer** may reasonably decide.

In the event of a **Change in Control**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this subparagraph B.

C.    **General**

If any premium is owed for the Policy, any premium received from the **Named Entity** shall first be applied to the premium owing for the Policy with the remainder applied to the premium for the **Discovery Period**.  The **Discovery Period** shall not take effect unless the outstanding premium for the Policy is paid in full and the premium for the **Discovery Period** is paid when due.

**IX. Change in Control**

If during the **Policy Period**:

A.    the **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

B.    any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(any of the above events herein referred to as a "**Change In Control**"),

then coverage under this Policy and any purchased **Coverage Part** shall continue until termination of such Policy or **Coverage Part**, but only with respect to **Claims** alleging **Wrongful Acts** committed, attempted or allegedly committed or attempted by the **Insureds** before such **Change In Control**.

This Policy and any purchased **Coverage Part** may not be canceled after the effective time of the **Change In Control**.  The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in Clause VIII. of these **General Terms and Conditions**.

The **Named Entity** shall give the **Insurer** written notice of the **Change In Control** as soon as practicable, but no later than thirty (30) days after the effective date of the **Change In Control** together with such other information as the **Insurer** may require.

**X. Subrogation**

In the event of any payment under this Policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured**.  In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Individual Insured** under this Policy unless such **Individual Insured** has been convicted of a criminal act, or been



# Private Company Management Liability Insurance Policy
## General Terms and Conditions

determined by a final adjudication to have committed a dishonest or fraudulent act or to have obtained any profit or advantage to which such **Individual Insured** was not legally entitled.

Additionally, in the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer's** subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances. Additionally, upon the **Insurer** making any payment of **Loss** within the Retention, the **Insurer** shall have a direct contractual right under this Policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States) such **Loss** which was paid within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer's** subrogation right pursuant to this Clause X. and any other rights the **Insurer** may have under applicable law.

| | |
|---|---|
| **XI. Other Insurance** | With respect to all **Coverage Parts**, other than the **EPLI Coverage Part**, such insurance as is provided by this Policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over any applicable **Limit of Liability** for this Policy or any **Coverage Part**. This Policy specifically shall be excess of any other policy pursuant to which any other insurer has a duty to defend a **Claim** for which this Policy may be obligated to pay **Loss**. |

Such insurance as is provided by the **EPLI Coverage Part** shall be primary unless expressly written to be excess over other applicable insurance.

With respect to all **Coverage Parts**, in the event of a **Claim** against an **Insured** arising out of his or her service as an **Outside Entity Executive**, or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased **Employee** or independent contractor **Employee** as described in the Definition of **Employee** in the applicable **Coverage Part**, coverage as is afforded by this Policy shall be specifically excess of any: (i) indemnification provided by such **Outside Entity** or leasing company; and (ii) any other insurance provided to such **Outside Entity**, leasing company or independent contractor.

| | |
|---|---|
| **XII. Representations and Severability** | In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this Policy as being accurate and complete. All such statements and representations are the basis of this Policy and are to be considered as incorporated into this Policy. |

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the Policy, then this Policy shall be void *ab initio* as to any **Insured** who knew as of the inception date of the **Policy Period** of the facts that were not accurately and completely disclosed in the **Application** (whether or not such **Insured** knew that such facts were not accurately and completely disclosed in the **Application**). Solely for purposes of determining whether this Policy shall be void *ab initio* as to an **Insured**, such aforesaid knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.



## Private Company Management Liability Insurance Policy
General Terms and Conditions

**XIII. Notice and Authority**

It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and all **Insureds** with respect to the giving of notice of any **Claim**, the giving and receiving of notice of cancellation and non-renewal, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the receipt and acceptance of any endorsements issued to form a part of this Policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer** and the exercising or declining to exercise any right to a **Discovery Period**.

**XIV. Assignment**

No change in, modification of or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized representative of the **Insurer**.

**XV. Action Against Insurer**

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by final judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or entity or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or entity shall have any right under this Policy to join the **Insurer** as a party to any action against the **Insured** or a **Company** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by the **Insured** or a **Company** or their legal representatives.

**XVI. Bankruptcy**

Bankruptcy or insolvency of any **Insured** or the **Insured's** estate shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this Policy.

**XVII. Coverage Territory**

Where legally permissible, this Policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

**XVIII. Governmental Restrictions**

This Policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the **Insurer** from providing insurance.

**XIX. Headings**

The descriptions in the headings and subheadings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

[The balance of this page is intentionally left blank.]



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

In consideration of the premium charged and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

**I. Insuring Agreements**

This **D&O Coverage Part** affords the following coverage:

**Coverage A:  Individual Insurance Coverage**

This **D&O Coverage Part** shall pay the **Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) for any actual or alleged **Wrongful Act** of such **Individual Insured**, except when and to the extent that a **Company** has indemnified the **Individual Insured** for such **Loss**.

**Coverage B:  Company Reimbursement Coverage**

This **D&O Coverage Part** shall pay the **Loss** of a **Company** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) for any actual or alleged **Wrongful Act** of such **Individual Insured**, but only when and to the extent that such **Company** has indemnified such **Individual Insured** for such **Loss**.

**Coverage C:  Company Coverage**

This **D&O Coverage Part** shall pay the **Loss** of a **Company** arising from a **Claim** first made against a **Company** during the **Policy Period** or the **Discovery Period** (if applicable) for any actual or alleged **Wrongful Act** of a **Company**.

**Coverage D:  Reputation Coverage**

This **D&O Coverage Part** shall pay the **Reputation Loss** of a **Company** solely with respect to a **Reputation Risk Event** that first commences and is reported to the **Insurer** during the **Policy Period** up to the amount of the **Reputation Loss Limit of Liability**. Payment of any **Reputation Loss** under this **D&O Coverage Part** shall not waive any of the **Insurer's** rights under this Policy or at law. Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Reputation Risk Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

A **Reputation Risk Event** first commences when a **Company** or any of its **Executives** first become aware of such **Reputation Risk Event** during the **Policy Period** and shall conclude at the earliest of the time when a risk management, public relations or law firm advises a **Company** that such **Reputation Risk Event** no longer exists or when the **Reputation Loss Limit of Liability** has been exhausted.

**Coverage E:  Derivative Demand Coverage**

This **D&O Coverage Part** shall pay the **Investigation Costs** of a **Company** arising from a **Derivative Demand Investigation** in response to a **Derivative Demand** first made during the **Policy Period** or the **Discovery Period** (if applicable), up to the amount of the **Derivative Demand Limit of Liability**.

PVT P002 CW (07/09)



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

**Defense Provision**

The **Insurer** does not assume any duty to defend; provided, however, the **Named Entity** may at its sole option tender to the **Insurer** the defense of a **Claim** for which coverage is provided by Clause VII. of this **D&O Coverage Part**.  Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** in excess of the applicable Retention on behalf of the **Insured** prior to final disposition of the **Claim**.

With respect to Coverage E above, it shall be the duty of the **Company** and not the duty of the **Insurer** to conduct, investigate and evaluate any **Derivative Demand** against its own **Executives**; provided, however, that the **Insurer** shall be entitled to effectively associate in the investigation, evaluation, negotiation and settlement of any **Derivative Demand Investigation**.

**II. Definitions**

A.  **Claim** means:

(i)  a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations);

(ii)  a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by:

    (1)  service of a complaint or similar pleading;

    (2)  return of an indictment, information or similar document (in the case of a criminal proceeding); or

    (3)  receipt or filing of a notice of charges; or

(iii)  a civil, criminal, administrative or regulatory investigation of an **Individual Insured**:

    (1)  once such **Individual Insured** is identified in writing by such investigating authority as a person against whom a proceeding described in subparagraph (ii) of this Definition may be commenced; or

    (2)  in the case of an investigation by the Securities Exchange Commission ("**SEC**") or a similar state or foreign government authority, after:

        (a)  the service of a subpoena upon such **Individual Insured**; or

        (b)  the **Individual Insured** is identified in a written "Wells" or other notice from the **SEC** or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Individual Insured**.

The term "**Claim**" shall also include any **Securities Claim** and, with respect to Coverage E above, any **Derivative Demand**.

B.  **Cleanup Costs** means expenses (including, but not limited to, legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

C.  **Defense Costs** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation,



# Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

D. **Derivative Demand** means a written demand by one or more security holders of a **Company** without the assistance, participation or solicitation of any **Executive**, upon the board of directors (or equivalent management body) of such **Company** requesting that it file, on behalf of the **Company**, a civil proceeding in a court of law against any **Executive** of the **Company** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts**.

E. **Derivative Demand Investigation** means the investigation by the **Company** or on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body) as to whether or not the **Company** should bring the civil proceeding demanded in a **Derivative Demand**.

F. **Derivative Demand Limit of Liability** means the dollar amount set forth in Item 6(b) of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

G. **Employee** means any past, present or future employee of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee or volunteer of a **Company** in his or her capacity as such. An individual who is leased to a **Company** shall also be an **Employee**, but only if such **Company** provides indemnification to such leased individual in the same manner as is provided to such **Company's** own employees.

**Employee** shall also mean any other individual who is contracted to perform work for a **Company**, or who is an independent contractor for a **Company**, but only if such **Company** provides or is required to provide indemnification to such individual in the same manner as provided to such **Company's** own employees, pursuant to a written contract; provided, however, a **Company** may request that no coverage be provided under this **D&O Coverage Part** for an independent contractor named in a specific **Claim**. Such request must be made in writing and within ninety (90) days of the **Claim** being reported to the **Insurer**. If no such request is made, this **D&O Coverage Part** shall apply as if such **Company** determined that such independent contractor shall receive coverage.

H. **Executive** means:

(i) any past, present or future duly elected or appointed director, officer, management committee member (of a duly constituted committee) or member of the Board of Managers;

(ii) any past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in subparagraph (i) of this Definition; or

(iii) any past, present or future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.



# Private Company Management Liability Insurance Policy
## Directors & Officers Liability Coverage Part ("D&O Coverage Part")

I.  **Financial Insolvency** means: (i) the appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an insolvent **Company**; (ii) the filing of a petition under the bankruptcy laws of the United States of America; or (iii) as to both (i) or (ii) of this Definition, any equivalent events outside the United States of America.

J.  **Foreign Jurisdiction** means any jurisdiction other than the United States of America or any of its territories or possessions.

K.  **Foreign Policy** means any standard executive management liability insurance policy (including all mandatory endorsements, if any) of the **Insurer** or an affiliate of the **Insurer**, which has been approved for sale within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this **D&O Coverage Part**. If more than one such policy exists, then **Foreign Policy** means the standard basic policy form typically offered for sale in that **Foreign Jurisdiction** for comparable risks by the **Insurer** or any other affiliate company of the **Insurer**. The term **Foreign Policy** shall not include any partnership management, pension trust or professional liability coverage.

L.  **Indemnifiable Loss** means **Loss** for which a **Company** has indemnified or is permitted or required to indemnify an **Individual Insured** pursuant to law, contract or the charter, by-laws, operating agreement or similar documents of such **Company**.

M.  **Individual Insured** means any:

   (i)    **Executive** of a **Company**;

   (ii)   **Employee** of a **Company**; or

   (iii)  **Outside Entity Executive**.

N.  **Insured** means:

   (i)    a **Company**; or

   (ii)   an **Individual Insured**.

O.  **Investigation Costs** means the reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** (including, but not limited to, attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any compensation or fees of any **Individual Insured**) incurred by the **Company** or its board of directors (or any equivalent management body), or any committee of the board of directors (or any equivalent management body), solely in connection with a **Derivative Demand Investigation**.

P.  **Loss** means the amount that any **Insured** becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to:

   (i)    judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements;

   (ii)   **Defense Costs**;

   (iii)  damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages.  The enforceability of this subparagraph (iii) shall be governed by such applicable

PVT P002 CW (07/09)



# Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

    law that most favors coverage for such punitive, exemplary and multiple damages;

(iv)   with respect to Coverage D, **Reputation Loss**; and

(v)   with respect to Coverage E, **Investigation Costs**.

**Loss** shall not include: (i) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; (ii) matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed; (iii) civil or criminal fines or penalties; (iv) taxes or tax penalties (whether imposed by federal, state, local or other governmental authority); or (v) the costs and expenses of complying with any injunctive relief or other form of non-monetary relief. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (i) through (v) of this subparagraph provided such **Defense Costs** result from a covered **Claim**.

**Loss** shall also not include any compensation, salary, wages, fees, benefits, overhead, charges or expenses of any **Insured**.

Q.   **Material Publication** means the publication, broadcast or circulation of unfavorable information regarding a **Company** which can reasonably be expected to lessen public confidence in the competence of the **Company** or its products and/or services, received or circulated in the geographic area of a **Company**.

R.   **Non-Indemnifiable Loss** means **Loss** for which a **Company** has neither indemnified nor is permitted or required to indemnify an **Individual Insured** pursuant to law or contract or the charter, by-laws, operating agreement or similar document of a **Company**.

S.   **Outside Entity** means:

(i)   any not-for-profit organization, other than a **Subsidiary** or **Affiliate**; or

(ii)   any other entity listed as an **Outside Entity** by endorsement to this Policy.

T.   **Outside Entity Executive** means: (i) any **Executive** of a **Company** serving in the capacity as director, officer, trustee, trustee emeritus or governor of an **Outside Entity**, but only if such service is at the specific request or direction of a **Company**; or (ii) any other person listed as an **Outside Entity Executive** in an endorsement to this **D&O Coverage Part**. It is understood and agreed that, in the event of a disagreement between a **Company** and an individual as to whether such individual was acting at the specific request or direction of such **Company**, this **D&O Coverage Part** shall abide by the determination of the **Named Entity** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** is first reported to the **Insurer** pursuant to the terms of the Policy. In the event no determination is made within such period, this **D&O Coverage Part** shall apply as if the **Named Entity** determined that such **Individual Insured** was not acting at such **Company's** specific request or direction.

U.   **Pollutants** means any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

PVT P002 CW (07/09)



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

V.  **Reputation Loss** means the following amounts incurred during the pendency of or within ninety (90) days prior to and in anticipation of a **Reputation Risk Event**, regardless of whether a **Claim** is ever made against an **Insured** arising from a **Reputation Risk Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

(i)  the reasonable and necessary fees and expenses incurred by a risk management, public relations or law firm in the performance of **Reputation Risk Management Services** for a **Company** arising from a **Reputation Risk Event**; and

(ii)  the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of **Reputation Risk Event** materials in the performance of **Reputation Risk Management Services** for a **Company** arising from a **Reputation Risk Event**.

W.  **Reputation Loss Limit of Liability** means the dollar amount set forth in Item 6(a) of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

X.  **Reputation Risk Event** means the public announcement of one of the following events which, in the good faith opinion of a **Company**, did cause or is reasonably likely to cause a **Material Publication**:

(i)  <u>Management Risk Event</u>: the death, incapacity or criminal indictment of any **Individual Insured** for whom a **Company** maintains key person life insurance;

(ii)  <u>Bankruptcy/Debt Default/Downsizing</u>: that: (1) a **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of such **Company**; (2) a **Company** has defaulted or intends to default on any debt obligation; or (3) the closing or forced sale of a department/unit/division of a **Company**;

(iii)  <u>Regulatory Risk Event</u>: the commencement or threat of litigation or other proceedings by any governmental or regulatory agency against a **Company**;

(iv)  <u>Bodily Injury/Abuse Risk Event</u>: an accusation that an **Individual Insured** (or an individual an **Insured** is legally responsible for) has intentionally caused bodily injury to or death of any person in the performance of his or her duties with a **Company**;

(v)  <u>Workplace Violence</u>: an **Employee** of a **Company** was the victim of a violent crime while on the premises of such **Company**; or

(vi)  <u>Child Abduction</u>: a child was abducted or kidnapped while under the care or supervision of a **Company**.

Y.  **Reputation Risk Management Services** means those services performed by a risk management, public relations or law firm retained by the **Insured**, with the prior written consent of the **Insurer**, to advise the **Insured** on minimizing potential harm to a **Company** arising from a **Reputation Risk Event**, including maintaining and restoring public confidence in such **Company**.

Z.  **Securities Claim** means a **Claim** made against any **Insured**:

(i)  alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale,



# Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

> or offer or solicitation of an offer to purchase or sell securities which is:
>
> (1) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities of a **Company**; or
>
> (2) brought by a security holder of a **Company** with respect to such security holder's interest in securities of such **Company**; or
>
> (ii) brought derivatively on behalf of a **Company** by a security holder of such **Company**.

AA. **Settlement Opportunity** means an **Insurer** recommended settlement that is within any applicable **Limit of Liability** and that is acceptable to the claimant.

BB. **Third Party Violation** means any actual or alleged harassment (including sexual harassment) or discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability), or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or an applicant for employment with a **Company** or an **Outside Entity**, including, but not limited to, customers, vendors and suppliers.

CC. **Wrongful Act** means:

(i) with respect to any **Executive** or **Employee** of a **Company**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Executive** or **Employee** in their respective capacities as such, or any matter claimed against such **Executive** or **Employee** of a **Company** solely by reason of his or her status as an **Executive** or **Employee** of a **Company**;

(ii) with respect to a **Company** under Coverage C, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company**; or

(iii) with respect to service on an **Outside Entity**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by an **Outside Entity Executive** in his or her capacity as such, or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as an **Outside Entity Executive** of an **Outside Entity**.

**III. Worldwide Coverage**   For **Claims** made and maintained in a **Foreign Jurisdiction** for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claims** the provisions of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to such **Insured** in the **Foreign Jurisdiction**; provided, however, this paragraph shall apply only to provisions more favorable by virtue of insuring clauses, extensions, definitions, exclusions, selection of other defense counsel, discovery or extended reporting period, notice and authority, dispute resolution process or order of payments provisions, if any, of the **Foreign Policy** when compared to the same or similar clauses of this **D&O Coverage Part**.  This paragraph shall not apply to excess provisions or Policy provisions that address cancellation and non-renewal, duty to defend, defense within or without limits, taxes, claims made provisions or any other provision of this Policy intended to govern coverage worldwide.



# Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

All premiums, limits, Retentions, **Loss** and other amounts under this **D&O Coverage Part** are expressed and payable in the currency of the United States of America.  If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this **D&O Coverage Part** (subject to the terms, conditions and limitations of this **D&O Coverage Part**) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

**IV. Exclusions**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.  arising out of, based upon or attributable to the:

   (i)  gaining of any profit or advantage to which any final adjudication establishes the **Insured** was not legally entitled;

   (ii)  purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law if any final adjudication establishes that such Section 16(b) violation occurred;

   (iii)  payment to any **Insured** of any remuneration without the previous approval of the security holders of the **Company**, if any final adjudication establishes such payment was illegal; or

   (iv)  committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule or law was committed;

B.  alleging, arising out of, based upon or attributable to the facts alleged, or the same or **Related Wrongful Act(s)** alleged or contained in any claim or demand which has been reported, or in any circumstances of which notice has been given, under any prior insurer's policy or policy of which this **D&O Coverage Part** is a renewal or replacement or which it may succeed in time;

C.  alleging, arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the **Continuity Date** for this **D&O Coverage Part**, or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior demand, suit, proceeding or in the underlying demand, order, decree or judgment;

D.  with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **D&O Coverage Part**;

E.  alleging, arising out of, based upon or attributable to any actual or alleged act, error or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an



# Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

**Outside Entity**;

F.   which is brought by or on behalf of a **Company** or any **Individual Insured**, other than an **Employee** of a **Company**; or which is brought by any security holder of the **Company**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, assistance of, active participation of or intervention of any **Company** or any **Executive** of a **Company**; provided, however, this exclusion shall not apply to:

(i)   any **Claim** brought by an **Individual Insured** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** which is covered by this Policy;

(ii)   in any bankruptcy proceeding by or against a **Company**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Company**;

(iii)   any **Claim** brought by any past **Executive** of a **Company** provided he/she has not served as an **Executive**, General Counsel, Risk Manager or consultant of a **Company** at any time during the three (3) years prior to the **Claim** being first made against any **Insured**; or

(iv)   any **Claim** brought by an **Executive** of a **Company** formed and operating in a **Foreign Jurisdiction** against such **Company** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

G.   for any **Wrongful Act** arising out of an **Individual Insured** serving in a capacity as an **Outside Entity Executive** if such **Claim** is brought by the **Outside Entity** or any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, the **Company,** or any **Executive** of the **Outside Entity** or the **Company**; provided, however, this Exclusion shall not apply to:

(i)   any **Claim** brought by an **Executive** of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** that is covered by this **D&O Coverage Part**;

(ii)   in any bankruptcy proceeding by or against an **Outside Entity**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Outside Entity**;

(iii)   any **Claim** brought by any past **Executive** of an **Outside Entity** provided he/she has not served as an **Executive**, General Counsel, Risk Manager or consultant of an **Outside Entity** at any time during the three (3) years prior to the **Claim** being first made against any **Insured**; or

(iv)   any **Claim** brought by an **Executive** of an **Outside Entity** formed and operating in a **Foreign Jurisdiction** against any **Outside Entity Executive** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

PVT P002 CW (07/09)



# Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

H.  alleging, arising out of, based upon or attributable to any public offering of securities by a **Company**, an **Outside Entity** or an **Affiliate** or alleging, arising out of, based upon or attributable to the purchase or sale of such securities subsequent to such public offering; provided, however, this exclusion will not apply to:

   (i)  any purchase or sale of securities, whether debt or equity, in a transaction or a series of transactions that are exempt from registration under the Securities Act of 1933.  Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; provided, however, the **Named Entity** shall give the **Insurer** written notice of any exempt public offering, together with full particulars, as soon as practicable but not later than thirty (30) days after the effective date of the exempt public offering; or

   (ii)  any **Claim** made by any security holder of a **Company** for the failure of such **Company** to undertake or complete the initial public offering or sale of securities of such **Company**;

I.  alleging, arising out of, based upon or attributable to the purchase by a **Company** of securities of a "Publicly Traded Entity" in a transaction which resulted, or would result, in such entity becoming an **Affiliate** or a **Subsidiary** of a **Company**.  An entity is a "Publicly Traded Entity" if any securities of such entity have previously been subject to a public offering;

J.  for bodily injury, emotional distress, mental anguish, sickness, disease or death of any person, or damage to, loss of use or destruction of any tangible property; provided, however, this Exclusion shall not apply to a **Securities Claim**;

K.  for any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, this Exclusion shall not apply to:

   (i)  **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**; or

   (ii)  **Loss** in connection with a **Securities Claim**, other than **Loss** constituting **Clean-up Costs**;

L.  for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law;

M.  alleging, arising out of, based upon or attributable to:

   (i)  the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered; or

   (ii)  improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**; or



# Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

    (iii)  failure to provide or enforce legally required meal or rest break periods;

N.  alleging, arising out of, based upon, or attributable to the employment of any individual or any wrongful employment practice, including, but not limited to, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim;

O.  alleging, arising out of, based upon, or attributable to a **Third Party Violation**; provided, however, this Exclusion shall not apply to a **Securities Claim**;

P.  alleging, arising out of, based upon or attributable to:

    (i)  payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign governmental or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated;

    (ii)  payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, members, principal security holders, owners or employees, or affiliates (as defined in the Securities Exchange Act of 1934, including any of their officers, directors, agents, owners, partners, representatives, principal security holders or employees) or any customers of a **Company** or any members of their family or any entity with which they are affiliated; or

    (iii)  political contributions, whether domestic or foreign;

Q.  with respect to Coverage C only:

    (i)  alleging, arising out of, based upon or attributable to plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

    (ii)  for any actual or alleged violation of any law, whether statutory, regulatory or common law, as respects the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

    (iii)  alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement; provided, however, this Exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement;

    (iv)  for injury resulting from libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium;

    (v)  alleging, arising out of, based upon or attributable to any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this **D&O Coverage Part**; provided, however, this Exclusion shall not apply to any **Securities Claim**; or



# Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

    (vi)   seeking fines or penalties or non-monetary relief against the **Company**; provided, however, that this exclusion shall not apply to any **Securities Claim**.

For the purpose of determining the applicability of the foregoing Exclusions, other than Exclusions B., C., D., F., G. and Q.: (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman, chief executive officer or chief financial officer (or equivalent positions) of a **Company** shall be imputed to such **Company**.

However, Exclusions A. through Q. do not apply to **Reputation Loss** or **Reputation Risk Events**

The **Insurer** shall not be liable to make any payment for such **Reputation Loss**:

R.    arising out of, based upon or attributable to the facts alleged, or the same or related **Reputation Risk Event** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this **D&O Coverage Part** is a renewal or replacement or which it may succeed in time;

S.    arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the **Continuity Date** for this **D&O Coverage Part**, or involving any **Reputation Risk Event** which is the same or a related **Reputation Risk Event** to that alleged in such pending or prior demand, suit, proceeding or in the underlying demand, order, decree or judgment.

T.    arising out of, based upon or attributable to any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

U.    arising out of, based upon or attributable to the hazardous properties of nuclear materials.

**V. Limits of Liability**    The following provisions shall apply in addition to the provisions of Clause IV. LIMITS OF LIABILITY of the **General Terms and Conditions**:

**Additional Executive Limit of Liability**

The **Additional Executive Limit of Liability**, if purchased as set forth in Item 6(c) of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy), will be an additional **Limit of Liability** in an amount not to exceed $500,000, which amount is in addition to, and not part of, the **Coverage Part Limit of Liability** applicable to this **D&O Coverage Part** as set forth in the Declarations ("**Additional Executive Limit of Liability**").

This **Additional Executive Limit of Liability** is available solely for **Loss** resulting from any **Claim** against any **Executive** of a **Company** covered under Coverage A of this **D&O Coverage Part**.

Notwithstanding anything in this Policy to the contrary, the **Additional Executive Limit of Liability** shall be excess of any insurance available that is specifically excess to this Policy and such excess insurance must be completely exhausted by payment of loss,



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

damages or defense costs thereunder before the **Insurer** shall have any obligation to make any payment on account of the **Additional Executive Limit of Liability**.

**Reputation Insurance**

The maximum limit of the **Insurer's** liability for all **Reputation Loss** arising from all **Reputation Risk Events** occurring during the **Policy Period**, in the aggregate, shall be the amount set forth in the Declarations as the **Reputation Loss Limit of Liability**. This **Reputation Loss Limit of Liability** shall be the maximum limit of the **Insurer** under this **D&O Coverage Part** for **Reputation Loss**, regardless of the number of **Reputation Risk Events** occurring during the **Policy Period**; provided, however, the **Reputation Loss Limit of Liability** shall be part of, and not in addition to, the **Coverage Part Limit of Liability** applicable to this **D&O Coverage Part** as set forth in the Declarations.

**Investigation Costs For Derivative Demand**

The maximum limit of the **Insurer's** liability for all **Investigation Costs** arising from all **Derivative Demand Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in the Declarations as the **Derivative Demand Limit of Liability**. The **Derivative Demand Limit of Liability** shall be the maximum limit of the **Insurer** under this **D&O Coverage Part** for **Investigation Costs** regardless of the number of **Derivative Demand Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), or the number of **Executives** subject to such **Derivative Demand Investigation**; provided, however, that the **Derivative Demand Limit of Liability** shall be part of, and not in addition to, the **Coverage Part Limit of Liability** applicable to this **D&O Coverage Part** as set forth in the Declarations.

**VI. Retention**

The following provision shall apply in addition to the provisions of Clause V. RETENTION of the **General Terms and Conditions:**

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) for this **D&O Coverage Part**, such Retention to be borne by the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (ii) **Loss** of a **Company**. A single Retention shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Act(s)**.

In the event a **Company** is unable to pay an applicable Retention due to **Financial Insolvency**, then the **Insurer** shall commence advancing **Loss** within the Retention; provided, however, that the **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from such **Company** pursuant to Clause X. SUBROGATION of the **General Terms and Conditions**.

No Retention is applicable to **Reputation Loss** or **Investigation Costs** or to **Non-Indemnifiable Loss** under Coverage A.

**VII. Defense Costs, Defense Counsel, Settlements & Judgments**

**Defense**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insured** shall not retain defense counsel or incur any **Defense Costs** without the prior written consent of the **Insurer**, such consent not to be



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

unreasonably withheld.

### Insured's Option to Tender Defense

The **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Entity** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause VI. of the **General Terms and Conditions**. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**.  Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**.  Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Entity**.  Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Clause VII.

In the event the **Insurer** accepts the tender of defense of such **Claim**, the **Insurer** shall be responsible for the retention of defense counsel for such **Claim**.

### General Provisions

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause VII., the **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured**, severally according to their respective interests, in the event and to the extent that any such **Insured** shall not be entitled under the terms and conditions of this **D&O Coverage Part** to payment of such **Loss**.

The **Insurer** shall have the right to fully and effectively associate with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation and take such actions which, in such **Insured's** judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act**.

Additionally, the **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, incur any **Defense Costs** or **Reputation Loss** or retain a risk management, public relations or law firm without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments, **Defense Costs** and **Reputation Loss** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **D&O Coverage Part**.  The **Insurer** shall not unreasonably withhold any consent required under this **D&O Coverage Part**, provided that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Claim** (or any portion thereof) is not covered under the terms of this **D&O Coverage Part**.  In addition, the



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

**Insured** shall not take any action, without the **Insurer's** written consent, which prejudices the **Insurer's** rights under this **D&O Coverage Part**.

When the **Insurer** has assumed the defense of a **Claim** and the **Insureds** do not consent to the first **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of such **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then, subject to any applicable **Limit of Liability**, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) eighty percent (80%) of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining twenty percent (20%) of such covered **Loss** excess of such **Settlement Opportunity Amount** be carried by the **Insureds** at their own risk and be uninsured.  Notwithstanding the foregoing, this paragraph shall not apply until such **Settlement Opportunity Amount** exceeds the applicable Retention set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) or to those **Claims** for which the **Insurer** has not assumed the defense.

With the express prior written consent of the **Insurer**, an **Insured** may select a defense counsel different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest.

**VIII.  Allocation**

In the event that the **Insured** tenders the defense of a **Claim** in accordance with Clause VII. above, the following allocation provision shall apply

If both **Loss** covered under this **D&O Coverage Part** and loss not covered under this **D&O Coverage Part** are incurred by the **Insureds** on account of any **Claim** because such **Claim** against the **Insureds** includes both covered and non-covered matters, then coverage under this **D&O Coverage Part** with respect to such **Claim** shall apply as follows:

A.  **Defense Costs**: One hundred percent (100%) of **Defense Costs** incurred by the **Insured** on account of such **Claim** will be considered covered **Loss** subject to Clause VII. of this **D&O Coverage Part**; and

B.  **Loss** other than **Defense Costs**: All remaining amounts incurred by the **Insured** on account of such **Claim** shall be allocated by the **Insurer** pro rata between covered **Loss** and non-covered loss based on the legal liability and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Claim**, based on the number of covered and non-covered counts, causes of action or allegations against the **Insureds**.

If the **Insureds** and the **Insurer** cannot agree on an allocation of **Loss**:

A.  no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and

B.  the **Insurer**, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one (1)



# Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

arbitrator selected by the **Insureds**, one (1) arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two (2) arbitrators.

**IX. Derivative Demand Coverage**

It is understood and agreed that the **Company** shall be entitled to payment under Coverage E. of this **D&O Coverage Part** for reimbursement of its covered **Investigation Costs** ninety (90) days after: (i) the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**, and (ii) such decision has been communicated to the security holders who made the **Derivative Demand** upon the **Company**. However, such payment shall be subject to an undertaking by the **Company**, in a form acceptable to the **Insurer**, that the **Company** shall return to the **Insurer** such payment in the event any **Company** or any security holder of the **Company** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand.**

Nothing in this **D&O Coverage Part**, including Coverage E., shall be construed to afford coverage under this **D&O Coverage Part** for any **Claim** brought by the **Company** against one or more of its own **Executives**, other than **Investigation Costs** incurred in a covered **Derivative Demand Investigation**.  Payment of any **Investigation Costs** under this **D&O Coverage Part** shall not waive any of the **Insurer's** rights under this Policy or at law.

**X. Public Securities Transactions**

If, during the **Policy Period**, the **Named Entity** intends to sell or offer to sell securities of any kind or nature whatsoever, issued at any time by the **Named Entity** in a transaction that is not exempt from registration under the Securities Act of 1933, as amended (a "**Transaction**"), the **Named Entity** will, no later than thirty (30) days prior to the effective date of the registration statement for such sale or offering, give the **Insurer** written notice of the proposed sale or offering and all information requested by the **Insurer** relating thereto.  Unless the **Insurer** determines to issue coverage there shall in fact be no coverage for such **Transaction**.

If, during the **Policy Period**, a **Company** purchases securities of a "Publicly Traded Entity" in a transaction which would result in such entity becoming an **Affiliate** or a **Subsidiary** of a **Company**, the **Named Entity** will, no later than thirty (30) days prior to such entity becoming an **Affiliate** or **Subsidiary**, give the **Insurer** written notice of the proposed purchase and all information requested by the **Insurer** relating thereto.  Unless the **Insurer** determines to issue coverage there shall in fact be no coverage for such "Publicly Traded Entity."

**XI.  Order of Payments**

In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **D&O Coverage Part** but which **Loss**, in the aggregate, exceeds the remaining available **Limit of Liability** applicable to this **D&O Coverage Part**, then the **Insurer** shall:

A.    first pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Part**, then with respect to whatever remaining **Limit of Liability** is available after payment of such **Loss**;

B.    then pay such **Loss** for which coverage is provided under Coverage B of this **D&O Coverage Part**, and



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

C.  then pay such **Loss** for which coverage is provided under Coverage C, D or E of this **D&O Coverage Part**.

In the event of **Loss** arising from a **Claim** for which payment is due under the provisions of this **D&O Coverage Part** (including those circumstances described in the first paragraph of this Clause XI., the **Insurer** shall at the written request of the **Named Entity**:

A.  first pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Part**, then

B.  either pay or hold payment for such **Loss** for which coverage is provided under Coverage B, C, D or E of this **D&O Coverage Part**.

In the event that the **Insurer** withholds payment under Coverage B, C, D or E of this **D&O Coverage Part** pursuant to the above request, then the **Insurer** shall at any time in the future, at the request of the **Named Entity**, release such **Loss** payment to a **Company**, or make such **Loss** payment directly to the **Individual Insured** in the event of covered **Loss** for any **Claim** covered under this **D&O Coverage Part** pursuant to Coverage A of this **D&O Coverage Part**.

The **Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer of** any of its obligations to prioritize payment of covered **Loss** under this **D&O Coverage Part** pursuant to this Clause XI.

[The balance of this page is intentionally left blank]

PVT P002 CW (07/09)



## Private Company Management Liability Insurance Policy
Employment Practices Liability Coverage Part ("**EPLI Coverage Part**")

In consideration of the premium charged and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

**I. Insuring Agreements**

This **EPLI Coverage Part** shall pay the **Loss** of an **Insured** arising from a **Claim** first made against such **Insured** during the **Policy Period** or **Discovery Period** (if applicable) for any actual or alleged **Wrongful Act** of such **Insured**.

**Defense Provision**

The **Insurer** does not assume any duty to defend; provided, however, the **Named Entity** may, at its sole option, tender to the **Insurer** the defense of a **Claim** for which coverage is provided by Clause V. of this **EPLI Coverage Part**.  Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** in excess of the applicable Retention amount on behalf of the **Insured** prior to final disposition of the **Claim**.

**II. Definitions**

A.  **Claim** means:

(i)  a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations);

(ii)  a civil, criminal, administrative or regulatory proceeding for monetary, non-monetary or injunctive relief which is commenced by:

(1)  service of a complaint or similar pleading;

(2)  return of an indictment, information or similar document (in the case of a criminal proceeding); or

(3)  receipt or filing of a notice of charges;

including, but not limited to, an Equal Employment Opportunity Commission ("**EEOC**") or Office of Federal Contract Compliance Program ("**OFCCP**") (or similar federal, state or local agency) proceeding or investigation; or

(iii)  an arbitration proceeding pursuant to an employment contract, policy or practice of a **Company** commenced by receipt of a demand for arbitration or similar document.

However, in no event shall the term "**Claim**" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

B.  **Defense Costs** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**.  **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

C.  **Employee** means any past, present or future employee of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee or volunteer of a



# Private Company Management Liability Insurance Policy
Employment Practices Liability Coverage Part ("**EPLI Coverage Part**")

**Company** in his or her capacity as such. An individual who is leased to a **Company** shall also be an **Employee**, but only if such **Company** provides indemnification to such leased individual in the same manner as is provided to such **Company's** own employees.

**Employee** shall also mean any other individual who is contracted to perform work for a **Company**, or who is an independent contractor for a **Company**, but only if such **Company** provides or is required to provide indemnification to such individual in the same manner as provided to such **Company's** own employees, pursuant to a written contract; provided, however, a **Company** may request that no coverage be provided under this **EPLI Coverage Part** for an independent contractor named in a specific **Claim**. Such request must be made in writing and within ninety (90) days of the **Claim** being reported to the **Insurer**. If no such request is made, this **EPLI Coverage Part** shall apply as if such **Company** determined that such independent contractor shall receive coverage.

D.   **Employment Practices Violation** means any actual or alleged:

    (i)    wrongful termination of employment (actual or constructive), dismissal or discharge;

    (ii)    breach of an implied contract;

    (iii)    harassment, sexual harassment or hostile work environment;

    (iv)    discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

    (v)    **Retaliation**;

    (vi)    employment-related misrepresentation(s) to an **Employee** of a **Company** or applicant for employment with a **Company** or an **Outside Entity**;

    (vii)    employment-related libel, slander, humiliation, defamation or invasion of privacy;

    (viii)    wrongful failure to employ or promote;

    (ix)    wrongful deprivation of career opportunity with a **Company**, wrongful discipline, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an **Employee** reference;

    (x)    failure to grant tenure; or

    (xi)    with respect to subparagraphs (i) through (x) of this Definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent organizational policies and procedures, or violation of an individual's civil rights;

but only if the actual or alleged **Employment Practices Violation** relates to an **Employee** of a **Company** or an **Outside Entity**, or to an applicant for employment with a **Company** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

E.   **Executive** means:

    (i)    any past, present or future duly elected or appointed director, officer,

PVT P003 CW (07/09)



# Private Company Management Liability Insurance Policy
Employment Practices Liability Coverage Part ("**EPLI Coverage Part**")

management committee member (of a duly constituted committee) or member of the Board of Managers;

(ii)    any past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in subparagraph (i) of this Definition; or

(iii)    any past, present or future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

F.    **Financial Insolvency** means: (i) the appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an insolvent **Company**; (ii) the filing of a petition under the bankruptcy laws of the United States of America; or (iii) as to both (i) or (ii) of this Definition, any equivalent events outside the United States of America.

G.    **Foreign Jurisdiction** means any jurisdiction other than the United States of America or any of its territories or possessions.

H.    **Individual Insured** means any:

(i)    **Executive** of a **Company**;

(ii)    **Employee** of a **Company**; or

(iii)    **Outside Entity Executive**.

I.    **Insured** means:

(i)    a **Company**; or

(ii)    an **Individual Insured**.

J.    **Loss** means the amount that any **Insured** becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to:

(i)    judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements;

(ii)    **Defense Costs**;

(iii)    damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages (including the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act).  The enforceability of this subparagraph (iii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;

(iv)    salary, wages and bonus compensation, including back pay and front pay; and

(v)    an award of statutory attorneys' fees.

**Loss** shall not include: (i) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; (ii) matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed; (iii) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (iv) the costs and expenses of complying with any order of injunctive relief or other



# Private Company Management Liability Insurance Policy
Employment Practices Liability Coverage Part ("**EPLI Coverage Part**")

form of non-monetary relief, including any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar; (v) civil or criminal fines or penalties; (vi) taxes or tax penalties or interest thereon (whether imposed by federal, state, local or other governmental authority). **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (i) through (vi) of this subparagraph provided such **Defense Costs** result from a covered **Claim**.

K.  **Outside Entity** means:

    (i)    any not-for-profit organization, other than a **Subsidiary** or **Affiliate**; or

    (ii)   any other entity listed as an **Outside Entity** by endorsement to this Policy.

L.  **Outside Entity Executive** means: (i) any **Executive** of a **Company** serving in the capacity as director, officer, trustee, trustee emeritus or governor of an **Outside Entity**, but only if such service is at the specific request or direction of a **Company**; or (ii) any other person listed as an **Outside Entity Executive** in an endorsement to this **EPLI Coverage Part**. It is understood and agreed that, in the event of a disagreement between a **Company** and an individual as to whether such individual was acting at the specific request or direction of such **Company**, this **EPLI Coverage Part** shall abide by the determination of the **Named Entity** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** is first reported to the **Insurer** pursuant to the terms of the Policy. In the event no determination is made within such period, this **EPLI Coverage Part** shall apply as if the **Named Entity** determined that such **Individual Insured** was not acting at such **Company's** specific request or direction.

M.  **Retaliation** means an adverse employment act of an **Insured** alleged to be in response to any of the following activities: (i) the disclosure or threat of disclosure by an **Employee** of a **Company** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** that is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (ii) the actual or attempted exercise by an **Employee** of a **Company** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (iii) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (iv) strikes of an **Employee** of a **Company** or an **Outside Entity**.

N.  **Settlement Opportunity** means an **Insurer** recommended settlement that is within any applicable **Limit of Liability** and that is acceptable to the claimant.

O.  **Third Party Violation** means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs (iii) and (iv) of the Definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with a **Company** or an **Outside Entity**, including, but not limited to, customers, vendors and suppliers.

PVT P003 CW (07/09)



# Private Company Management Liability Insurance Policy
Employment Practices Liability Coverage Part ("**EPLI Coverage Part**")

P.   **Wrongful Act** means any actual or alleged: (i) **Employment Practices Violation**; or (ii) **Third Party Violation**.

**III. Exclusions**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.   arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act was committed;

B.   alleging, arising out of, based upon or attributable to the facts alleged, or the same or **Related Wrongful Act(s)** alleged or contained in any claim or demand which has been reported, or in any circumstances of which notice has been given, under any prior insurer's policy or policy of which this **EPLI Coverage Part** is a renewal or replacement or which it may succeed in time;

C.   alleging, arising out of, based upon or attributable to any demand, suit, **EEOC** (or similar state, local or foreign agency) proceeding or investigation or other proceeding pending against any **Insured**, or order, decree or judgment entered for or against any **Insured**, on or prior to the **Continuity Date** for this **EPLI Coverage Part**, or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior demand, suit, **EEOC** (or similar state, local or foreign agency) proceeding or investigation or other proceeding in the underlying demand, order, decree or judgment;

D.   with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **EPLI Coverage Part**;

E.   alleging, arising out of, based upon or attributable to any actual or alleged act, error or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**;

F.   for bodily injury, sickness, disease or death of any person, or damage to, loss of use or destruction of any tangible property; provided, however, this Exclusion shall not apply to a **Claim** for emotional distress or mental anguish arising from a **Wrongful Act**;

G.   for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this Exclusion shall not apply to the portion of a **Claim** attributable to **Retaliation**;

H.   alleging, arising out of, based upon or attributable to:

(i)   the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered (other than tort-based back pay or front pay damages for non-conversion



## Private Company Management Liability Insurance Policy
Employment Practices Liability Coverage Part ("**EPLI Coverage Part**")

   related torts);

(ii)  improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**; or

(iii)  failure to provide or enforce legally required meal or rest break periods;

   provided, however, this Exclusion shall not apply to the portion of a **Claim** attributable to **Retaliation**;

I.  alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, this Exclusion shall not apply to the portion of a **Claim** attributable to **Retaliation**; or

J.  alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any **Insured** under any express contract or agreement; provided, however, this Exclusion shall not apply to:

(i)  liability which would have attached in the absence of such express contract or agreement; or

(ii)  **Loss** constituting **Defense Costs**.

For the purpose of determining the applicability of the foregoing Exclusions, other than Exclusions B., C. and D.:  (i) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (ii) only facts pertaining to and knowledge possessed by any past, present or future chairman, chief executive officer or chief financial officer (or equivalent positions) of a **Company** shall be imputed to such **Company**.

**IV. Retention**

The following provision shall apply in addition to the provisions of Clause V. RETENTION of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) for this **EPLI Coverage Part**, such Retention to be borne by the **Insureds** and shall remain uninsured.  A single Retention shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Act(s)**.

In the event a **Company** is unable to pay an applicable Retention due to **Financial Insolvency**, then the **Insurer** shall commence advancing **Loss** within the Retention; provided, however, that the **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from such **Company** pursuant to Clause X. SUBROGATION of the **General Terms and Conditions**.

**V.  Defense Costs, Defense Counsel, Settlements &**

**Defense**

The **Insurer** does not assume any duty to defend.  The **Insureds** shall defend and contest any **Claim** made against them.



## Private Company Management Liability Insurance Policy
Employment Practices Liability Coverage Part ("**EPLI Coverage Part**")

**Judgments**

Notwithstanding the foregoing, the **Insured** shall not retain defense counsel or incur any **Defense Costs** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld.

### Insured's Option to Tender Defense

The **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Entity** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause VI. of the **General Terms and Conditions**. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**.  Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**.  Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Entity**.  Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Clause V.

In the event the **Insurer** accepts the tender of defense of such **Claim**, the **Insurer** shall be responsible for the retention of defense counsel for such **Claim**.

### General Provisions

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause V., the **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**.  Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that the **Insureds** shall not be entitled under the terms and conditions of this **EPLI Coverage Part** to payment of such **Loss**.

The **Insurer** shall have the right to fully and effectively associate with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation and take such actions which, in such **Insured's** judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act**.

Additionally, the **Insured** shall not admit or assume any liability, enter into any settlement agreement or stipulate to any judgment without the prior written consent of the **Insurer**.  If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **EPLI Coverage Part**.  The **Insurer** shall not unreasonably withhold any consent required under this **EPLI Coverage Part**, provided that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Claim** (or any portion thereof) is not covered under the terms of this **EPLI Coverage Part**.  In addition, the **Insured** shall not take any action,



# Private Company Management Liability Insurance Policy
Employment Practices Liability Coverage Part ("**EPLI Coverage Part**")

without the **Insurer's** written consent, which prejudices the **Insurer's** rights under this **EPLI Coverage Part**.

In the event the **Insureds** do not consent to the first **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of such **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then, subject to any applicable **Limit of Liability**, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) eighty percent (80%) of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining twenty percent (20%) of such covered **Loss** excess of such **Settlement Opportunity Amount** shall be carried by the **Insureds** at their own risk and be uninsured.  Notwithstanding the foregoing, this paragraph shall not apply until such **Settlement Opportunity Amount** exceeds the applicable Retention set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

With the express prior written consent of the **Insurer**, an **Insured** may select a defense counsel different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest.

**VI. Allocation**

In the event that the **Insured** tenders the defense of a **Claim** in accordance with Clause V. above, the following allocation provision shall apply:

If both **Loss** covered under this **EPLI Coverage Part** and loss not covered under this **EPLI Coverage Part** are incurred by the **Insureds** on account of any **Claim** because such **Claim** against the **Insureds** includes both covered and non-covered matters, then coverage under this **EPLI Coverage Part** with respect to such **Claim** shall apply as follows:

A. **Defense Costs**: One hundred percent (100%) of **Defense Costs** incurred by the **Insured** on account of such **Claim** will be considered covered **Loss** subject to Clause V. of this **EPLI Coverage Part**; and

B. **Loss** other than **Defense Costs**: All remaining amounts incurred by the **Insured** on account of such **Claim** shall be allocated by the **Insurer** pro rata between covered **Loss** and non-covered loss based on the legal liability and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Claim**, also based on the number of covered and non-covered counts, causes of action or allegations against the **Insured(s)**.

If the **Insureds** and the **Insurer** cannot agree on an allocation of **Loss**:

A. no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and

B. the **Insurer**, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one (1) arbitrator selected by the **Insureds**, one (1) arbitrator selected by the **Insurer**, and a



**Private Company Management Liability Insurance Policy**
Employment Practices Liability Coverage Part ("**EPLI Coverage Part**")

third independent arbitrator selected by the first two (2) arbitrators.

[The balance of this page is intentionally left blank.]



# Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

In consideration of the premium charged and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

**I. Insuring Agreements**

This **FLI Coverage Part** affords the following coverage:

**Coverage A:  Fiduciary Liability Coverage**

This **FLI Coverage Part** shall pay the **Loss** of an **Insured** arising from a **Claim** first made against such **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) for any actual or alleged **Wrongful Act** of such **Insured** (or any person for whom such **Insured** is legally responsible).

**Coverage B:  Voluntary Settlement Program Coverage**

This **FLI Coverage Part** shall pay the **Voluntary Compliance Loss** of an **Insured** with respect to a **Voluntary Settlement Program Notice** first given to the **Insurer** during the **Policy Period** or the **Discovery Period** (if applicable) provided: (i) the **Voluntary Compliance Loss** is incurred after such **Voluntary Settlement Program Notice** is first given to the **Insurer**; and (ii) the **Insurer's** maximum liability for all **Voluntary Compliance Loss** with respect to all **Voluntary Settlement Program Notices** shall be the **Voluntary Compliance Loss Limit of Liability**.

The payment of any **Voluntary Compliance Loss** under this **FLI Coverage Part** shall not waive any of the **Insurer's** rights under this Policy or at law, including in the event that a **Voluntary Compliance Loss** results in a **Claim**.

**Defense Provision**

In accordance with Clause VII. of this **FLI Coverage Part**, the **Insurer** shall have the right and duty to defend any **Claim** against an **Insured** alleging a **Wrongful Act**, even if such **Claim** is groundless, false or fraudulent; provided, however, the **Insured** may at its sole option assume the defense of a **Claim** for which coverage is provided by this **FLI Coverage Part**.  Regardless of whether the defense is so assumed, the **Insurer** shall advance **Defense Costs** in excess of the applicable Retention on behalf of the **Insured** prior to final disposition of the **Claim**.

With respect to any **Voluntary Settlement Program Notice**, the **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, incur any **Voluntary Compliance Loss** or retain any defense counsel without the prior written consent of the **Insurer**.

**II. Definitions**

A.  **Benefits** means any obligation under a **Plan** to a participant or beneficiary that is a payment of money or property, or the grant of a privilege, right, option or perquisite.

B.  **Breach of Fiduciary Duty** means a violation of the responsibilities, obligations or duties imposed upon **Insureds** by **ERISA**.

C.  **Claim** means:

(i)  a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations);

(ii)  a civil, criminal or arbitration proceeding for monetary, non-monetary or



# Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

injunctive relief which is commenced by:

(1)  service of a complaint or similar pleading;

(2)  return of an indictment, information or similar document (in the case of a criminal proceeding); or

(3)  receipt or filing of a notice of charges;

(iii)  a formal agency or regulatory or adjudicative proceeding commenced by the filing of a notice of charges or similar document or by entry of a formal investigative order or similar document to which an **Insured** is subject; or

(iv)  a written notice of commencement of a fact-finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, but not limited to, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Social Services or by the United Kingdom Occupational Pensions Regulatory Authority, pursuant to the English Pension Scheme Act 1993, the English Pensions Act 1995, or rules or regulations thereunder.

D.  **Cleanup Costs** means expenses (including, but not limited to, legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

E.  **Consulting Fees** means fees charged by a third party actuary, benefits consultant or accountant resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs or expenses associated with: (i) a routine or regularly scheduled **Plan** audit; or (ii) an audit or review for the purpose of identifying or finding the **Breach of Fiduciary Duty** or assessing the extent of **Loss** resulting from such **Breach of Fiduciary Duty**.

F.  **Defense Costs** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**.  **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

G.  **ERISA** means the Employee Retirement Income Security Act of 1974, the English Pension Scheme Act 1993, the English Pensions Act 1995, all as amended, any similar common or statutory law anywhere in the world, and any rules or regulations promulgated under any such Acts or law.

H.  **Foreign Jurisdiction** means any jurisdiction other than the United States of America or any of its territories or possessions.

I.  **Foreign Policy** means any standard fiduciary or pension trust liability insurance policy (including all mandatory endorsements, if any) of the **Insurer** or an affiliate of the **Insurer**, which has been approved for sale within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this **FLI Coverage Part**. If more than one such policy exists, then **Foreign Policy** means the standard basic policy form typically offered for sale in that **Foreign Jurisdiction** for comparable risks by the **Insurer** or any other affiliate company of the **Insurer**. The

PVT P004 CW (07/09)



# Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

term **Foreign Policy** shall not include any directors and officers, partnership management, comprehensive general liability, employment practices liability or professional liability coverage.

J.   **Indemnifiable Loss** means **Loss** for which a **Company** has indemnified or is permitted or required to indemnify any **Individual Insured** pursuant to law, contract or the charter, by-laws, operating agreement or similar documents of such **Company**.

K.   **Individual Insured** means:

(i)   any past, present or future director, officer, governor, general partner, management committee member, duly elected or appointed member of a **Pension Oversight Committee**, member of the board of managers or employee of a **Company** or, if applicable, of a **Plan**;

(ii)   anyone described in subparagraph (i) of this Definition acting in their capacity as a fiduciary, administrator or trustee of a **Plan**; or

(iii)   any past, present or future natural person in a position equivalent to a position listed in subparagraph (i) or (ii) of this Definition in the event that a **Company** is operating in a **Foreign Jurisdiction**.

L.   **Insured** means: (i) any **Individual Insured**; (ii) any **Plan**; (iii) any **Company**; (iv) any **Pension Oversight Committee**; or (v) any other person or entity in his, her or its capacity as a fiduciary, administrator or trustee of a **Plan** and included by written endorsement attached to this **FLI Coverage Part**.

M.   **Loss** means the amount that any **Insured** becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to:

(i)   judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements;

(ii)   **Defense Costs**; and

(iii)   damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages.  The enforceability of this subparagraph (iii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages.

Solely with respect to Coverage B, **Loss** means **Voluntary Compliance Loss**.

With respect to Coverages A and B, **Loss** does not include:

(i)   any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**;

(ii)   any costs incurred by a **Company** or **Plan** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(iii)   any amount incurred by an **Insured** in the defense or investigation of any action, proceeding, investigation or demand that is not then a **Claim** even if (1) such amount also benefits the defense of a covered **Claim**, or (2) such action, proceeding, investigation or demand subsequently gives rise to a **Claim**;

(iv)   matters which may be deemed uninsurable under the law pursuant to which

PVT P004 CW (07/09)



## Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

this Policy shall be construed;

(v) taxes, fines or penalties (whether imposed by federal, state, local or other governmental authority), except:

(1) the five percent (5%) or less, or the twenty percent (20%) or less, civil penalties imposed upon an **Insured** as a fiduciary under Section 502(i) or (l), respectively, of **ERISA**, as amended;

(2) any civil penalties imposed by the Pension Ombudsman appointed by the United Kingdom Secretary of State for Social Services or by the United Kingdom Occupational Pensions Regulatory Authority, pursuant to the English Pension Scheme Act 1993, the English Pensions Act 1995, or rules or regulations thereunder; provided any coverage for such civil penalties applies only if the funds or assets of the subject **Plan** are not used to fund, pay or reimburse the premium for this **FLI Coverage Part**;

(3) solely with respect to Coverage B, **Voluntary Compliance Loss**; or

(4) any civil money penalties imposed upon an **Insured** for violation of the privacy provisions of the Health Insurance Portability and Accountability Act ("**HIPAA**") (hereinafter civil money penalties referred to as "**HIPAA Penalties**"); provided the **Insurer's** maximum liability for all **HIPAA Penalties** on account of all **Claims** first made during each **Policy Period** shall be the **HIPAA Penalties Sublimit of Liability** set forth under Clause V. of this **FLI Coverage Part**; or

(vi) **Benefits**, or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Individual Insured**; provided, however, **Loss** shall include a monetary award in, or fund for settling, a **Claim** against any **Insured** to the extent it alleges a reduction in the value of **Plan** assets or a reduction in the value of the actual accounts of **Plan** participants by reason of a change in value of the investments held by that **Plan**, regardless of whether the amounts sought in such **Claim** have been characterized by plaintiffs as "benefits" or held by a court to be "benefits."

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (i), (ii), (iv), (v) and (vi) as applicable to Coverages A and B, subject to the other terms, conditions and Exclusions of this **FLI Coverage Part**. **Defense Costs** shall not be provided for items specifically excluded from **Loss** pursuant to subparagraph (iii) immediately above.

N. **Pension Oversight Committee** means any committee or subcommittee duly formed by a **Trustee Company** and duly appointed to act as a trustee of the **Plan** or acting as a constructive trustee of the **Plan** with responsibility for pension or **Benefits** oversight.

O. **Plan** means:

(i) any plan, fund, trust or program (including any Employee Benefit Plan, Pension Benefit Plan, Welfare Plan and IRA-Based Plan, as each are defined in **ERISA**), established anywhere in the world, which was, is or shall be sponsored solely by a **Company**, or sponsored jointly by a **Company** and a



# Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

labor organization, solely for the benefit of the employees or the directors and officers of such **Company** and which existed on or before the inception date set forth in Item 2. of the Declarations or which is created, formed or acquired after such inception date; provided that any coverage with respect to any such **Plan** created, formed or acquired during the **Policy Period** shall apply only for **Wrongful Acts** committed, attempted, or allegedly committed or attempted, after the effective date of such creation, formation or acquisition and shall be subject to Clause IX. of this **FLI Coverage Part**;

(ii) any other employee benefit plan or program not subject to **ERISA** which is sponsored solely by a **Company** for the benefit of the employees or directors and officers of such **Company**, including any fringe benefit or excess benefit plan;

(iii) any other plan or program otherwise described in subparagraphs (i) or (ii) of this Definition while such plan or program is being actively developed, formed or proposed by a **Company** prior to the formal creation of such plan or program; provided, however, no coverage is afforded under this **FLI Coverage Part** for any **Claim** against an **Insured** as a settlor of any plan, fund, trust or program or similar uninsured capacity with respect to any plan or program; and

(iv) any other plan, fund or program specifically included as a **Plan** by endorsement to this **FLI Coverage Part**.

The Definition of **Plan** shall also include: the following government-mandated programs: unemployment insurance, Social Security or disability benefits, but solely with respect to a **Wrongful Act** defined in subparagraph (ii) of the Definition of **Wrongful Act**.

In no event, however, shall the Definition of **Plan** include any employee stock ownership plan or multiemployer plan.

P. **Pollutants** means any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

Q. **Remediation Expenses** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** resulting from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs and expenses associated with finding or assessing such **Breach of Fiduciary Duty** and any compensation of **Individual Insureds** or employees of an **Insured**.

R. **Settlement Opportunity** means an **Insurer** recommended settlement that is within any applicable **Limit of Liability** and that is acceptable to the claimant.

S. **Trustee Company** means a corporate trustee company that is: (i) established by a **Company** formed and operating in a **Foreign Jurisdiction**, or any predecessor of such **Company**; and (ii) duly appointed to act as a trustee of a **Plan** in a **Foreign Jurisdiction** and sponsored solely by such **Company**.

T. **Voluntary Compliance Loss** means any **Remediation Expenses**, **Consulting Fees** or other amounts paid by an **Insured** to a governmental authority pursuant to a **Voluntary Settlement Program** for the actual or alleged inadvertent non-



# Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

compliance by a **Plan** with any statute, rule or regulation; provided, however, **Voluntary Compliance Loss** shall not include: (i) any costs to correct the non-compliance, or any other charges, expenses, taxes or damages; or (ii) any fees, fines, penalties or sanctions relating to a **Plan** which, as of the earlier of the inception of this **FLI Coverage Part** or the inception of the first policy in an uninterrupted series of policies issued by the **Insurer** of which this **FLI Coverage Part** is a direct or indirect renewal or replacement, any **Insured** had knowledge of the actual or alleged inadvertent non-compliance.

U.  **Voluntary Compliance Loss Limit of Liability** means the dollar amount set forth in Item 6(d) of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

V.  **Voluntary Settlement Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the U.S. Internal Revenue Service or the U.S. Department of Labor, including, but not limited to, the Employee Plans Compliance Resolution System, the Audit Closing Agreement Program, the Voluntary Compliance Resolution Program, the Walk-in Closing Agreement Program, the Administrative Policy Regarding Self-Correction, the Tax Sheltered Annuity Voluntary Correction Program, the Delinquent Filer Voluntary Compliance Program and the Voluntary Fiduciary Correction Program, or any similar program administered by a governmental authority located outside the United States of America.

W.  **Voluntary Settlement Program Notice** means prior written notice to the **Insurer** by the **Insured** of the **Insured's** intent to enter into a **Voluntary Settlement Program**.

X.  **Wrongful Act** means:

(i)  a violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** with respect to a **Plan**, or any matter claimed against an **Insured** solely by reason of his, her or its status as a fiduciary, but only with respect to a **Plan**; or

(ii)  any act, error or omission solely in the performance of the following administrative duties or activities, but only with respect to a **Plan**:

(1)  counseling employees, participants and beneficiaries;

(2)  providing interpretations;

(3)  handling of records;

(4)  activities affecting enrollment, termination or cancellation of employees, participants and beneficiaries under the **Plan**; or

(5)  complying with the privacy provisions of the **HIPAA** and any amendments thereto;

or any matter claimed against an **Insured** solely by reason of his, her or its status as an administrator, but only with respect to a **Plan**.



## Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

**III. Worldwide Coverage**

For **Claims** made and maintained in a **Foreign Jurisdiction** for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claims** the provisions of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to such **Insured** in the **Foreign Jurisdiction**; provided, however, this paragraph shall apply only to provisions more favorable by virtue of insuring clauses, extensions, definitions, exclusions, pre-authorized securities or other defense counsel, discovery or extended reporting period, notice and authority, dispute resolution process or order of payments provisions, if any, of the **Foreign Policy** when compared to the same or similar clauses of this **FLI Coverage Part**. This paragraph shall not apply to excess provisions or policy provisions that address cancellation and non-renewal, duty to defend, defense within or without limits, taxes, claims made provisions or any other provision of this Policy intended to govern coverage worldwide.

All premiums, limits, Retentions, **Loss** and other amounts under this **FLI Coverage Part** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this **FLI Coverage Part** (subject to the terms, conditions and limitations of this **FLI Coverage Part**) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

**IV. Exclusions**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.  arising out of, based upon or attributable to:

   (i)   the gaining of any profit or advantage to which any final adjudication establishes the **Insured** was not legally entitled; or

   (ii)  the committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, including, but not limited to, **ERISA** if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act or willful violation of statute, rule or law was committed;

B.  alleging, arising out of, based upon or attributable to the facts alleged, or the same or **Related Wrongful Act(s)** alleged or contained in any claim or demand which has been reported, or in any circumstances of which notice has been given, under any prior insurer's policy or policy of which this **FLI Coverage Part** is a renewal or replacement or which it may succeed in time;

C.  alleging, arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the **Continuity Date** for this **FLI Coverage Part**, or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior demand, suit, proceeding or in the underlying demand, order, decree or judgment;

D.  for discrimination in violation of any law; provided, however, this Exclusion shall not apply to discrimination in violation of **ERISA**;



# Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

E.  for failure to fund a **Plan** in accordance with **ERISA** or the **Plan** instrument or documents, or the failure to collect contributions owed to the **Plan**; provided, however, this Exclusion shall not apply to: (i) **Defense Costs**; or (ii) the portion of **Loss** that is payable as a personal obligation of an **Individual Insured**;

F.  alleging, arising out of, based upon or attributable to any act, error or omission of an **Insured** in his, her or its capacity as a fiduciary or administrator of any plan, fund or program, other than a **Plan** as defined in this **FLI Coverage Part**, or by reason of his, her or its status as a fiduciary or administrator of such other plan, fund or program;

G.  for bodily injury, sickness, disease, death, emotional distress or mental anguish of any person, or damage to, loss of use or destruction of any tangible property; provided, however, this Exclusion shall not apply to **Defense Costs** incurred in the defense of a **Claim** for **Breach of Fiduciary Duty**;

H.  alleging, arising out of, based upon or attributable to any **Wrongful Act** as respects the **Plan** taking place at any time when a **Company** did not sponsor such **Plan** or when the **Individual Insured** was not a fiduciary, administrator, trustee, **Pension Oversight Committee Member**, director, officer, governor, management committee member, member of the board of managers, general partner or employee of a **Company** or, if applicable, a **Plan**; or

I.  alleging, arising out of, based upon, attributable to: (i) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; including any **Claim** for financial loss to any **Company** or **Plan** or creditors based upon, arising from or in consequence of any matter described in subparagraph (i) or (ii) of this Exclusion; provided, however, this Exclusion shall not apply to:

(i)  non-**Indemnifiable Loss** arising from a **Claim** alleging damage to a **Plan**, other than **Cleanup Costs**; or

(ii)  any **Claim** brought by or on behalf of a beneficiary of or participant in any **Plan** based upon, arising from or in consequence of the diminution in value of any securities owned by the **Plan** in any entity other than a **Company**, if such diminution in value is allegedly as a result of the matters described above in this Exclusion (I).

For the purpose of determining the applicability of the foregoing Exclusions, other than Exclusions B. and C.: (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman, chief executive officer or chief financial officer (or equivalent positions) of a **Company** shall be imputed to such **Company**.

**V. Limits of Liability**      **The following provisions shall apply in addition to the provisions of Clause IV. LIMITS OF LIABILITY of the General Terms and Conditions:**

**Voluntary Compliance Loss Limit of Liability**

The maximum limit of the **Insurer's** liability for all **Voluntary Compliance Loss** incurred during the **Policy Period** and/or the **Discovery Period** (if applicable), in the aggregate,



# Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

shall be the **Voluntary Compliance Loss Limit of Liability**. The **Voluntary Compliance Loss Limit of Liability** shall be part of, and not in addition to, the **Coverage Part Limit of Liability** applicable to this **FLI Coverage Part** as set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

### HIPAA Penalties Sublimit of Liability

The maximum limit of the **Insurer's** liability for all **HIPAA Penalties** in the aggregate shall be twenty-five thousand dollars ($25,000) ("**HIPAA Penalties Sublimit of Liability**"). The **HIPAA Penalties Sublimit of Liability** shall be part of, and not in addition to, the **Coverage Part Limit of Liability** applicable to this **FLI Coverage Part** as set forth in Item 4. the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

| | |
|---|---|
| **VI. Retention** | The following provision shall apply in addition to the provisions of Clause V. RETENTION of the **General Terms and Conditions**: |

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) for this **FLI Coverage Part**, such Retention to be borne by the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (ii) **Loss** of a **Company**. A single Retention shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Act(s)**.

No Retention is applicable to **Voluntary Compliance Loss** or **HIPAA Penalties**.

| | |
|---|---|
| **VII. Defense Costs, Defense Counsel, Settlements & Judgments** | **Defense** |

Except as hereinafter stated, the **Insurer** shall have both the right and duty to defend any **Claim** against an **Insured** alleging a **Wrongful Act**, even if such **Claim** is groundless, false or fraudulent.

The **Insured** shall have the right to effectively associate with the **Insurer** in the defense of any **Claim**, including, but not limited to, negotiating a settlement, subject to the provisions of this Clause VII.

### Insured's Option to Assume Defense

Notwithstanding the above, the **Insureds** shall have the right to assume the defense of any **Claim** made against them. This right shall be exercised in writing by the **Named Entity** on the behalf of all **Insureds** within thirty (30) days of the reporting of the **Claim** to the **Insurer** pursuant to Clause VI. of the **General Terms and Conditions**. Upon receipt of such written request, the **Insurer** shall tender the defense of the **Claim** to the **Insureds** and the **Insurer** cannot re-assume the defense of the **Claim**. The **Insurer** shall have the right to effectively associate with the **Insureds** in the defense of any **Claim**, including, but not limited to, negotiating a settlement and approving the selection of defense counsel. Provided that the **Insurer** shall be permitted to effectively associate with the **Insureds** in the defense of any **Claim**, including, but not limited to, negotiating a settlement of any **Claim** and approving the selection of defense counsel, the **Insurer's** consent to settlements, stipulated judgments and **Defense Costs** shall not be



## Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

unreasonably withheld.

**General Provisions**

The **Insurer** shall advance **Defense Costs** on behalf of the **Insured** prior to the final disposition of a **Claim**, subject to the other provisions of this **FLI Coverage Part**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that the **Insureds** shall not be entitled to payment of such **Loss** under the terms and conditions of this **FLI Coverage Part**.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, incur any **Defense Costs** or **Voluntary Compliance Loss** or retain any defense counsel without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments, **Defense Costs** and **Voluntary Compliance Loss** which have been consented to in writing by the **Insurer** shall be recoverable as **Loss** under the terms of this **FLI Coverage Part**.

If an **Insured** has not assumed the defense of a **Claim** and does not consent to the first **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of such **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then, subject to any applicable **Limit of Liability**, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) eighty percent (80%) of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining twenty percent (20%) of such covered **Loss** excess of such **Settlement Opportunity Amount** shall be carried by the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until such **Settlement Opportunity Amount** exceeds the applicable Retention set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) or to those **Claims** for which the **Insured** has assumed the defense.

The **Insureds** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require.

**VIII. Allocation**

Provided that the **Insured** does not assume the defense of a **Claim** in accordance with Clause VII. above, the following allocation provision shall apply:

If both **Loss** covered under this **FLI Coverage Part** and loss not covered under this **FLI Coverage Part** are incurred by the **Insureds** on account of any **Claim** because such **Claim** against the **Insureds** includes both covered and non-covered matters, then coverage under this **FLI Coverage Part** with respect to such **Claim** shall apply as follows:

A.   **Defense Costs**: One hundred percent (100%) of **Defense Costs** incurred by the **Insured** on account of such **Claim** will be considered covered **Loss** subject to Clause VII. of this **FLI Coverage Part**; and

B.   **Loss** other than **Defense Costs**: All remaining amounts incurred by the **Insured** on



# Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

account of such **Claim** shall be allocated by the **Insurer** pro rata between covered **Loss** and non-covered loss based on the legal liability and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Claim**, based on the number of counts, causes of action or allegations against the **Insureds**.

If the **Insureds** and the **Insurer** cannot agree on an allocation of **Loss**:

A. no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and

B. the **Insurer**, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one (1) arbitrator selected by the **Insureds**, one (1) arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two (2) arbitrators.

## IX. Change in Exposure

**Coverage for Plans Created, Formed or Acquired During the Policy Period**

If a **Plan**:

A. is created, formed or acquired during the **Policy Period** as a result of a **Company's** acquisition of a **Subsidiary** whose assets total less than twenty five percent (25%) of the total consolidated assets of such **Company** as of the inception date of this **FLI Coverage Part**; or

B. is created, formed or acquired during the **Policy Period** and such **Plan's** assets total less than twenty five percent (25%) of the total consolidated assets of all covered **Plans** as of the inception date of this **FLI Coverage Part**;

then this **FLI Coverage Part** shall apply to such **Plan** (but solely with respect to any **Wrongful Act** occurring after the date of such creation, formation or acquisition). The **Named Entity** shall provide the **Insurer** with full particulars of such new **Plan** before the end of the **Policy Period**.

If a **Plan**:

A. is created, formed or acquired during the **Policy Period** as a result of a **Company's** acquisition of a **Subsidiary** whose assets total twenty five percent (25%) or more of the total consolidated assets of such **Company** as of the inception date of this **FLI Coverage Part**; or

B. is created, formed or acquired during the **Policy Period** and such **Plan's** assets total twenty five percent (25%) or more of the total consolidated assets of all covered **Plans** as of the inception date of this **FLI Coverage Part**;

then, this **FLI Coverage Part** shall apply to such **Plan** (but solely with respect to any **Wrongful Act** occurring after the date of such creation, formation or acquisition), but only upon the condition that within ninety (90) days of its creation, formation or acquisition, the **Named Entity** shall have provided the **Insurer** with a completed **Application** for such new **Plan** and agreed to any additional premium or amendment of the provisions of this **FLI Coverage Part** required by the **Insurer** relating to such new **Plan**.

**Coverage for Terminated Plans**

If a **Company** terminates a **Plan** before or after the inception date set forth in Item 2. of



## Private Company Management Liability Insurance Policy
Fiduciary Liability Insurance Coverage Part ("**FLI Coverage Part**")

the Declarations, coverage under this **FLI Coverage Part** with respect to such terminated **Plan** and its **Insureds** shall continue until termination of this **FLI Coverage Part** for those who were **Insureds** prior to or at the time of such **Plan** termination or who would have been **Insureds** at the time of such termination if this **FLI Coverage Part** had then been in effect. Such continuation of coverage shall apply with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted, prior to or after the date the **Plan** was terminated.

**X. Subrogation**

Notwithstanding anything in Clause X. SUBROGATION of the **General Terms and Conditions** to the contrary, the **Insurer** shall not exercise it's subrogation rights unless required to exercise its recourse rights pursuant to **ERISA**.

In the event the **Insurer** recovers any amounts based on its recourse rights under **ERISA**, any **Limit of Liability** applicable to this **FLI Coverage Part** shall be restored to the extent of such recovery after subtracting any costs, expenses or reimbursements incurred by the **Insurer** in connection therewith.

**XI. Order of Payments**

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this **FLI Coverage Part**, then the **Insurer** shall in all events:

A.   first, pay **Loss** for which coverage is provided under this **FLI Coverage Part** for any **Individual Insured**;

B.   second, only after payment of **Loss** has been made pursuant to subparagraph A. of this Clause with respect to whatever remaining amount of any **Limit of Liability** applicable to this **FLI Coverage Part** is available after such payment, pay the **Loss** of any covered **Plan**; and

C.   then, only after payment of **Loss** has been made pursuant to subparagraphs A. and B. of this Clause, with respect to whatever remaining amount of any **Limit of Liability** applicable to this **FLI Coverage Part** is available after such payment, shall payment for a **Company** be made for such other **Loss** for which coverage is provided under this **FLI Coverage Part**.

[The balance of this page is intentionally left blank.]



**Endorsement 1**

NAMED INSURED: Primary Color Systems Corporation

**E4104.1 California Amendatory Endorsement**                    Page 1 of 3

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

| | |
|---|---|
| \_\_\_ | **Declarations** |
| \_X\_ | **General Terms and Conditions** |
| \_X\_ | **D&O Coverage Part** |
| \_X\_ | **EPLI Coverage Part** |
| \_X\_ | **FLI Coverage Part** |
| \_X\_ | **ELAW Coverage Part** |

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above, if purchased, are modified as follows:

1.  The **CANCELLATION** Clause is deleted in its entirety and replaced by  the following:

    **CANCELLATION**

    **Notice of Cancellation**

    A.      The **Named Entity** may cancel this Policy or any individual **Coverage Part** by giving the **Insurer** advance written notice stating when thereafter such cancellation shall be effective.  If the **Named Entity** cancels this Policy or any individual **Coverage Part**, the **Insurer** shall retain the customary short rate proportion of the premium.

    B.      The **Insurer** may also cancel this Policy by mailing or delivering to the **Named Entity** at the address shown in the Declarations, and the producer of record, written notice, including the reason for cancellation, stating when not less than thirty (30) days thereafter (or ten (10) days thereafter when cancellation is due to non-payment of premium or discovery of fraud), the cancellation shall be effective.  The mailing of such notice shall be sufficient proof of notice and this Policy shall terminate at the date and hour specified in such notice.  If the **Insurer** cancels this Policy, any return premium shall be calculated pro rata.  Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of the cancellation, but such payment shall be made as soon as practicable.

    If this Policy has been in effect for more than sixty (60) days or is a renewal, the **Insurer** may only cancel this Policy for one or more of the following reasons:

    (a)  Nonpayment of premium, including payment due on a prior policy issued by the **Insurer** and due during the current policy term covering the same risks;

    (b)  Discovery of fraud or material misrepresentation by:

        i. The **Company** or the **Company's** representative in obtaining this insurance; or

        ii. The **Company** or the **Company's** representative in pursuing a **Claim** under the Policy.



## Endorsement 1

NAMED INSURED: Primary Color Systems Corporation

**E4104.1 California Amendatory Endorsement**                    Page 2 of 3

(c) A judgment by a court or an administrative tribunal that the **Company** has violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against;

(d) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the **Company** or the **Company's** representative, which materially increase any of the risks insured against;

(e) Failure by the **Company** or the **Company's** representative to implement reasonable loss control requirements, agreed to by the **Company** as a condition of policy issuance, or which were conditions precedent to the **Insurer's** use of a particular rate or rating plan, if that failure materially increases any of the risks insured against;

(f) A determination by the Commissioner of Insurance that the

   i.  Loss of, or changes in, our reinsurance covering all or part of the risk would threaten the **Insurer's** financial integrity or solvency; or

   ii. Continuation of the policy coverage would:
       a. Place the **Insurer** in violation of California law or the laws of the state where the **Insurer is** domiciled; or
       b. Threaten the **Insurer's** solvency.

(g) A change by the **Company** or the **Company's** representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, is included in the Policy.

### Nonrenewal

A.  If the **Insurer** elects not to renew this Policy, the **Insurer** will mail or deliver to the **Named Entity** written notice of nonrenewal, stating the reason for nonrenewal, not less than sixty (60) days, but not more than one hundred twenty (120) days before the end of the **Policy Period**.

   The **Insurer** will mail the notice of nonrenewal to the **Named Entity** at the last mailing address known to the **Insurer**. If the notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.

B.  The **Insurer** is not required to send notice of nonrenewal in the following situations:

(a) If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the **Insurer** and a member of its insurance group.

(b) If the policy has been extended for 90 days or less, provided that notice has been given in accordance with paragraph A above.

(c) If the **Named Entity** has obtained replacement coverage, or if the **Named Entity** has agreed, in writing, within 60 days of the termination of the Policy, to obtain that coverage.



**Endorsement 1**

NAMED INSURED: Primary Color Systems Corporation

**E4104.1 California Amendatory Endorsement**                                    Page 3 of 3

(d) If the Policy is for a period of no more than 60 days and the **Named Entity** is notified at the time of issuance that it will not be renewed.

(e) If the **Named Entity** requests a change in the terms or conditions or risks covered by the Policy within 60 days of the end of the **Policy Period**.

(f) If the **Insurer** made a written offer to the **Named Entity**, in accordance with the timeframes shown in paragraph A above, to renew the Policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

2. The definition of **Loss** in the **DEFINITIONS** Clause in the **D&O Coverage Part**, the **EPLI Coverage Part**, the **FLI Coverage Part**, and the **ELAW Coverage Part**, if purchased, is modified to the extent necessary to provide the following:

> To the extent coverage is provided for punitive, exemplary and multiple damages, such coverage shall not apply to **Claims** which are governed by the laws of the State of California.

3. The  **General Terms and Conditions** is amended by adding the following Clause at the end thereof:

**Policy Conflicts**

To the extent any term or condition contained in  the Policy or any Endorsement attached thereto conflicts with any term or condition contained in this or any other State Amendatory Endorsement attached to the Policy, such terms and conditions most favorable to the Insured shall apply.

All other terms and conditions remain unchanged.

PVT E4104 CA (06/09)

Endorsement effective: 07/01/2018          Policy No.:      UVA1455136.18
Endorsement No:          1                 Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 2**

NAMED INSURED: Primary Color Systems Corporation

**E3830.1 Professional E&O Exclusion**                                    Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

|       |                              |
|-------|------------------------------|
| \_\_\_ | **Declarations**             |
| \_\_\_ | **General Terms and Conditions** |
| \_X\_ | **D&O Coverage Part**        |
| \_\_\_ | **EPLI Coverage Part**       |
| \_\_\_ | **FLI Coverage Part**        |
| \_\_\_ | **ELAW Coverage Part**       |

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

1.  The **EXCLUSIONS** Clause is amended to include the following paragraph at the end thereof:

    The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

    PE-A.   alleging, arising out of, based upon or attributable to an **Insured's** performance of or failure to perform professional services for others for a fee, or any act(s), error(s) or omission(s) relating thereto.

All other terms and conditions remain unchanged.

Endorsement effective: 07/01/2018          Policy No.:      UVA1455136.18
Endorsement No:        2                   Processed Date: 06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 3**

NAMED INSURED: Primary Color Systems Corporation

**E9997.4 Policyholder Disclosure Notice of Terrorism Insurance Coverage**          Page 1 of 1

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in2015, the definition of act of terrorism has changed. *As defined in Section 102(1) of the Act:* the term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015;  84% beginning on January 1, 2016;  83% beginning on January 1, 2017;  82% beginning on January 1, 2018;  81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $309.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE MY COVERAGE AND I HAVE BEEN NOTIFIED OF THE PORTION OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Policyholder/Applicant's Signature: _____

Print Name: _____   Date: _____

Insurance Company: _____

INT E9997 CW  (01/15)



Endorsement effective: 07/01/2018          Policy No.:        UVA1455136.18
Endorsement No:          3                 Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                    Page 1 of 12

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

[ ]     **Declarations**
[ ]     **General Terms and Conditions**
[X]     **D&O Coverage Part**
[X]     **EPLI Coverage Part**
[X]     **FLI Coverage Part**
[ ]     **ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that, solely with respect to the coverage as provided by **Coverage Part(s)** selected above:

**Application Definition Amended**

In the **Definitions** Clause of the **General Terms and Conditions**, the definition of **Application** is deleted in its entirety and replaced with the following:

B.   **Application** means the signed application for the Policy, including any attachments and other materials or information submitted in conjunction with the signed application.  The **Application** shall be deemed attached to and part of this Policy.  If this Policy is a renewal or replacement of a previous policy or policies issued by the **Insurer**, all signed applications and other materials that were attached to and part of those previous policies shall be considered part of this **Application** for this Policy.  With respect to the **FLI Coverage Part** (if purchased), **Application** shall also mean any public documents filed by the **Named Entity** or any **Subsidiary** with any federal, state, local, or foreign regulatory agency within the twelve (12) months immediately preceding the inception date set forth in Item 2. of the Declarations.

**Related Wrongful Act Definition Amended**

In the **Definitions** Clause of the **General Terms and Conditions**, the definition of **Related Wrongful Acts** is deleted in its entirety and replaced with the following:

P.   **Related Wrongful Act(s)** means **Wrongful Act(s)** as defined in the applicable **Coverage Part** which are the same, repeated, or continuous to other **Wrongful Act(s)** as defined in the same applicable **Coverage Part**.

**Related Wrongful Act(s)** shall also mean **Wrongful Act(s)** as defined in the applicable **Coverage Part** which arise from a common causal connection or cause the same or related damages, or a common nexus or nucleus of facts to other **Wrongful Act(s)** as defined in the same applicable **Coverage Part**.

**Claims** can allege **Related Wrongful Act(s)** regardless of whether such **Claims** involve the same or different claimants, **Insureds**, or legal causes of action.

ME-0091



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                                      Page 2 of 12

**Pre-set Discovery Period Percentage for six (6) years**

In the **Discovery Period** Clause of the **General Terms and Conditions**, subparagraph A(i) of the **Cancellation or Non-Renewal** paragraph is deleted in its entirety and replaced with the following:

(i)   The premium for the purchased **Discovery Period** shall be the **Full Annual Premium** multiplied by the applicable percentage amount set forth immediately below for the length of time elected. If no such percentage is set forth for a specific length of time, or the percentage is set forth as "to be determined," then the premium for such **Discovery Period** shall be an amount as the **Insurer** may reasonably decide.

| | |
|---|---|
| 1 Year | <u>TBD</u> |
| 2 Years | <u>TBD</u> |
| 3 Years | <u>TBD</u> |
| 4 Years | <u>TBD</u> |
| 5 Years | <u>TBD</u> |
| 6 Years | <u>175%</u> |

**Representations & Severability Amended**

The **Representations and Severability** Clause of the **General Terms and Conditions** is deleted in its entirety and replaced with the following:

In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this Policy as being accurate and complete. All such statements and representations are the basis of this Policy and are to be considered as incorporated into this Policy.

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the Policy, then the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** who knew as of the inception date of the **Policy Period** of the facts that were not accurately and completely disclosed in the **Application** (whether or not such **Insured** knew that such facts were not accurately and completely disclosed in the **Application**) and such **Claim** arises out of, is based upon or is attributable to these misrepresented facts contained in the **Application**.  For purposes of determining the applicability of the foregoing exclusion to an **Insured**: (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and (2) only facts pertaining to and knowledge possessed by any past, present, or future chairman, chief executive officer, or chief financial officer (or equivalent positions) of a **Company** shall be imputed to such **Company**.

Notwithstanding the foregoing, this Policy and any **Coverage Part** shall not be rescinded by the **Insurer** in whole or in part for any reason.

ME-0091



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                    Page 3 of 12

**Securities Claim Definition Amended**

In the **Definitions** Clause of the **D&O Coverage Part** (if purchased), subparagraph (i) of the definition of "**Securities Claim**" is deleted in its entirety and replaced with the following:

(i)    alleging a violation of any federal, state, local or foreign regulation, rule, statute or applicable common law regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is brought by:

1.   any person or entity alleging, arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities of a **Company**; or

2.   a security holder of a **Company** with respect to such security holder's interest in securities of such **Company**; or

**Conduct Exclusion Amended**

In the **Exclusions** Clause of the **D&O Coverage Part** (if purchased), paragraph A. is deleted in its entirety and replaced with the following:

A. arising out of, based upon or attributable to the:

(i)    gaining of any profit or advantage to which a final adjudication in the action underlying the **Claim** establishes the **Insured** was not legally entitled;

(ii)   payment to any **Insured** of any remuneration without the previous approval of the security holders of the **Company**, if a final adjudication in the action underlying the **Claim** establishes such payment was illegal; or

(iii)  committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule, or law, if a final adjudication in the action underlying the **Claim** establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule, or law was committed;

**Pending or Prior Act Exclusions Amended**

In the **Exclusions** Clause of the **D&O Coverage Part** (if purchased), paragraphs C. and S. are deleted in their entirety and replaced with the following:

C.   arising out of, based upon or attributable to any written demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the **Continuity Date** for this **D&O Coverage Part**, or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior written demand, suit, proceeding or in the underlying demand, order, decree or judgment;

ME-0091



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                       Page 4 of 12

S.  arising out of, based upon or attributable to any written demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the **Continuity Date** for this **D&O Coverage Part**, or involving any **Reputation Risk Event** which is the same or a related **Reputation Risk Event** to that alleged in such pending or prior written demand, suit, proceeding or in the underlying demand, order, decree or judgment;

**Capacity Exclusion Amended**

In the **Exclusions** Clause of the **D&O Coverage Part** (if purchased), paragraph E. is deleted in its entirety and replaced with the following:

E.  alleging, arising out of, based upon or attributable to any actual or alleged act, error or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**; provided, however, this Exclusion shall not apply to a **Securities Claim**;

**Insured vs. Insured Exclusions Amended**

In the **Exclusions** Clause of the **D&O Coverage Part** (if purchased), paragraphs F. and G. are deleted in their entirety and replaced with the following:

F.  which is brought by or on behalf of a **Company** or any **Individual Insured**, other than an **Employee** of a **Company**; or which is brought by any security holder of the **Company**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, assistance of, active participation of or intervention of any **Company** or any **Executive** of a **Company**, provided, however, that any **Whistleblower Act** by an **Executive** of a **Company**, shall not be considered solicitation, assistance, active participation, or intervention of such **Executive**;

provided further, however, this Exclusion shall not apply to:

(i) any **Claim** brought by an **Individual Insured** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** which is covered by this Policy;

(ii) in any bankruptcy proceeding by or against a **Company**, any **Claim** brought by the examiner, trustee, receiver, liquidator, rehabilitator or creditor committee (or any assignee thereof) of such **Company**;

(iii) any **Claim** brought by any past **Executive** of a **Company** provided he/she has not served as an **Executive**, General Counsel, Risk Manager or consultant of a **Company** at any time during the three (3) years prior to the **Claim** being first made against any **Insured**; or

(iv) any **Claim** brought by an **Executive** of a **Company** formed and operating in a **Foreign Jurisdiction** against such **Company** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada, or any other common law country (including any territories thereof);

ME-0091



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                     Page 5 of 12

G.  for any **Wrongful Act** arising out of an **Individual Insured** serving in a capacity as an **Outside Entity Executive** if such **Claim** is brought by the **Outside Entity** or any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, the **Company**, or any **Executive** of the **Outside Entity** or the **Company**; provided, however, that the **Whistleblower Act** by an **Executive** of an **Outside Entity** or a **Company**, shall not be considered solicitation, assistance, active participation, or intervention of such **Executive**.

However, this Exclusion shall not apply to:

(i) any **Claim** brought by an **Executive** of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** that is covered by this **D&O Coverage Part**;

(ii) in any bankruptcy proceeding by or against an **Outside Entity**, any **Claim** brought by the examiner, trustee, receiver, liquidator, rehabilitator, or creditors committee (or any assignee thereof) of such **Outside Entity**;

(iii) any **Claim** brought by any past **Executive** of an **Outside Entity** provided he/she has not served as an **Executive**, General Counsel, Risk Manager or consultant of an **Outside Entity** at any time during the three (3) years prior to the **Claim** being first made against any **Insured**; or

(iv) any **Claim** brought by an **Executive** of an **Outside Entity** formed and operating in a **Foreign Jurisdiction** against any **Outside Entity Executive** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada, or any other common law country (including any territories thereof);

For purposes of Exclusions F. and G., **Whistleblower Act** means any of the activity set forth in 18 U.S.C. Sec. 1514A(a), or any similar law relating to a whistleblower, engaged in by a whistleblower with a federal regulatory or law enforcement agency, Member of Congress, or any committee of Congress, or person with supervisory authority over the whistleblower, or an enforcement action by the whistleblower set forth in 18 U.S.C. Sec. 1514A (b), or any similar law relating to a whistleblower.

**Public Offering Exclusion Amended**

In the **Exclusions** Clause of the **D&O Coverage Part** (if purchased), subparagraph H(i) is deleted in its entirety and replaced with the following:

(i)   any public offering of securities that has not been declared effective by the Securities Exchange Commission, or any purchase or sale of securities, whether debt or equity, in a transaction or a series of transactions thereof or that are exempt from registration under the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; provided, however, the **Named Entity** shall give the **Insurer** written notice of any exempt public offering, together with full particulars, as soon as practicable but no later than thirty (30) days prior to the renewal or replacement of this Policy; or



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                    Page 6 of 12

**ERISA Exclusion Amended**

In the **Exclusions** Clause of the **D&O Coverage Part** (if purchased), paragraph L. is deleted in its entirety and replaced with the following:

L.  for violation(s) of any of the responsibilities, obligations, or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the promulgated under such legislations, and all as amended, or any similar federal, state, local, or foreign statutory law or common law; provided, however, this Exclusion shall not apply to a **Securities Claim**;

**FCPA Exclusion Removed (No Foreign Operations)**

In the **Exclusions** Clause of the **D&O Coverage Part** (if purchased), paragraph P. is deleted in its entirety.

**Intellectual Property Exclusion Amended**

In the **Exclusions** Clause of the **D&O Coverage Part** (if purchased), subparagraph Q(i) is deleted in its entirety and replaced with the following:

(i)  alleging, arising out of, based upon or attributable to plagiarism, misappropriation, infringement, or violation of copyright, patent, trademark, trade secret, or any other intellectual property rights; provided, however, this Exclusion shall not apply to a **Securities Claim**;

**Contract Exclusion Amended**

In the **Exclusions** Clause of the **D&O Coverage Part** (if purchased), subparagraph Q(iii) is deleted in its entirety and replaced with the following:

(iii)  alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement; provided, however, this Exclusion shall not apply to:

  (1)  liability which would have attached in the absence of such express contract or agreement; or

  (2)  **Loss** constituting **Defense Costs** incurred in connection with a **Securities Claim**;

ME-0091



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                    Page 7 of 12

**Professional Services Exclusion Amended**

In the **Exclusions** Clause of the **D&O Coverage Part** (if purchased), subparagraph Q(v) is deleted in its entirety and replaced with the following:

(v)     for any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others for a fee by any person or entity otherwise entitled to coverage under this **D&O Coverage Part**; provided, however, this Exclusion shall not apply to a **Securities Claim**; or

**Cooperation Clause Amended (90/10)**

In the **Defense Costs, Defense Counsel, Settlements & Judgments** Clause of the **D&O Coverage Part** (if purchased), the paragraph concerning the **Insureds'** failure to consent to a **Settlement Opportunity** is deleted in its entirety and replaced with the following:

When the **Insurer** has assumed the defense of a **Claim** and the **Insureds** do not consent to the first **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of such **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then, subject to any applicable **Limit of Liability**, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) ninety percent (90%) of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining ten percent (10%) of such covered **Loss** excess of such **Settlement Opportunity Amount** shall be carried by the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until such **Settlement Opportunity Amount** exceeds the applicable Retention set forth in Item 4. of the Declarations or to those **Claims** for which the **Insurer** has not assumed the defense.

**Derivative Demand Coverage Clause Amended**

In the **Derivative Demand Coverage** Clause of the **D&O Coverage Part** (if purchased), the first paragraph is deleted in its entirety and replaced with the following:

It is understood and agreed that the **Company** shall be entitled to payment under Coverage E of this **D&O Coverage Part** for reimbursement of its covered **Investigation Costs** ninety (90) days after: (i) the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**; and (ii) such decision has been communicated to the security holders who made the **Derivative Demand** upon the **Company**.

ME-0091



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                            Page 8 of 12

**Public Securities Transactions Clause Amended**

In the **Public Securities Transactions** Clause of the **D&O Coverage Part** (if purchased), the first paragraph is deleted in its entirety and replaced with the following:

    It is understood and agreed that if, during the **Policy Period**, the **Named Entity** intends to sell or offer to sell securities of any kind or nature whatsoever, issued at any time by the **Named Entity** in a transaction that is not exempt from registration under the Securities Act of 1933, as amended (a "**Transaction**"), then unless the **Insurer** determines to issue coverage there shall in fact be no coverage for such **Transaction**.

**Order of Payments Clause Amended**

In the **Order of Payments** Clause of the **D&O Coverage Part** (if purchased), the third paragraph is deleted in its entirety and replaced with the following:

    In the event that the **Insurer** withholds payment under Coverage B, C, D or E of this **D&O Coverage Part** pursuant to the above request, then the **Insurer** shall at any time in the future, at the request of the Chief Executive Officer of the **Company**, release such **Loss** payment to a **Company**, or make such **Loss** payment directly to the **Individual Insured** in the event of covered **Loss** for any **Claim** covered under this **D&O Coverage Part** pursuant to Coverage A of this **D&O Coverage Part**.

**Retaliation Definition Amended (Without Limitation Language)**

In the **Definitions** Clause of the **EPLI Coverage Part** (if purchased), paragraph M., "**Retaliation,**" is deleted in its entirety and replaced with the following:

M.  **Retaliation** means an adverse employment act of an **Insured** alleged to be in response to any of the following activities: (i) the disclosure or threat of disclosure by an **Employee** of a **Company** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** that is alleged to be a violation of any federal, state, local, or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (ii) the actual or attempted exercise by an **Employee** of a **Company** or an **Outside Entity** of any right that such **Employee** has under law, including without limitation, rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (iii) the filing of any claim under the Federal False Claims Act or any other federal, state, local, or foreign "whistle-blower" law; or (iv) strikes of an **Employee** of a **Company** or an **Outside Entity**.

ME-0091



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                    Page 9 of 12

**Pending or Prior Act Exclusion Amended**

In the **Exclusions** Clause of the **EPLI Coverage Part** (if purchased), paragraph C. is deleted in its entirety and replaced with the following:

C.  alleging, arising out of, based upon or attributable to any written demand, suit, **EEOC** (or similar state, local, or foreign agency) proceeding or investigation or other proceeding pending against any **Insured**, or order, decree, or judgment entered for or against any **Insured**, on or prior to the **Continuity Date** for this **EPLI Coverage Part**, or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior written demand, suit, **EEOC** (or similar state, local, or foreign agency) proceeding or investigation or other proceeding in the underlying demand, order, decree, or judgment;

It is understood and agreed that for purposes of this Exclusion C. the filing for unemployment benefits by an **Individual Insured** on or prior to the **Continuity Date** for this **EPLI Coverage Part** shall not constitute a "written demand, suit, **EEOC** (or similar state, local, or foreign agency) proceeding or investigation or other proceeding,"

**Cooperation Clause Amended (90/10)**

In the **Defense Costs, Defense Counsel, Settlements & Judgments** Clause of the **EPLI Coverage Part** (if purchased), the paragraph concerning the **Insureds'** failure to consent to a **Settlement Opportunity** is deleted in its entirety and replaced with the following:

When the **Insurer** has assumed the defense of a **Claim** and the **Insureds** do not consent to the first **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of such **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then, subject to any applicable **Limit of Liability**, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"); plus (2) ninety percent (90%) of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining ten percent (10%) of such covered **Loss** excess of such **Settlement Opportunity Amount** shall be carried by the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until such **Settlement Opportunity Amount** exceeds the applicable Retention set forth in Item 4. of the Declarations or to those **Claims** for which the **Insurer** has not assumed the defense.

ME-0091



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                    Page 10 of 12

**502(c) ERISA Penalty Coverage (with Sublimit)**

The following is added to the end of paragraph M., "**Loss**," in the **Definitions** Clause of the **FLI Coverage Part**:

> **Loss** also means the civil penalties imposed upon an **Insured** under Section 502(c) of **ERISA** in connection with a covered **Claim**.

> It is further understood and agreed that the maximum limit of the **Insurer's** liability for all such civil penalties in the aggregate shall be $25,000 (,the "**502(c) Civil Penalties Sublimit of Liability**"). This **502(c) Civil Penalties Sublimit of Liability** shall be part of, and not in addition to, the **Coverage Part Limit of Liability** applicable to this **FLI Coverage Part** as set forth in Item 4. the Declarations.

**Conduct Exclusion Amended**

In **Exclusions** Clause of the **FLI Coverage Part** (if purchased), paragraph A. is deleted in its entirety and replaced with the following:

A.        arising out of, based upon or attributable to:

(i)    gaining of any profit or advantage to which a final adjudication in the action underlying the **Claim** establishes the **Insured** was not legally entitled;

(ii)   the committing of any deliberate criminal or deliberate fraudulent act, or any wilful violation of any statute, rule or law, including, but not limited to, **ERISA** if a final adjudication in the action underlying the **Claim** establishes that such deliberate criminal or deliberate fraudulent act or willful violation of statute, rule or law was committed;

**Pending or Prior Litigation Exclusion Amended**

In the **Exclusions** Clause of the **FLI Coverage Part** (if purchased), paragraph C. is deleted in its entirety and replaced with the following:

C.    alleging, arising out of, based upon or attributable to any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the **Continuity Date** for this **FLI Coverage Part**, or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior written demand, suit, proceeding or in the underlying demand, order, decree or judgment;

ME-0091



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                    Page 11 of 12

**Prior Wrongful Act Exclusion Amended**

In the **Exclusions** Clause of the **FLI Coverage Part** (if purchased), paragraph H. is deleted in its entirety and replaced with the following:

H.  alleging, arising out of, based upon or attributable to any **Wrongful Act** as respects the **Plan** taking place at any time when a **Company** did not sponsor such **Plan** or when the **Individual Insured** was not a fiduciary, administrator, trustee, **Pension Oversight Committee Member**, director, officer, governor, management committee member, member of the board of managers, general partner or employee of a **Company** or, if applicable, a **Plan**;

provided, however, solely with respect to any subsequent **Related Wrongful Act** (as relates to the excluded **Wrongful Act** outlined in this paragraph H. above) occurring after the time the **Company** sponsors such **Plan**, it is understood and agreed that this Exclusion shall not apply to any **Related Wrongful Act** if any **Insured** did not know or could not have reasonably foreseen that such **Related Wrongful Act** could lead to a **Claim** under this Policy;

**Cooperation Clause (90/10)**

In the **Defense Costs, Defense Counsel, Settlements & Judgments** Clause of the **FLI Coverage Part** (if purchased), the paragraph concerning the **Insureds'** failure to consent to a **Settlement Opportunity** is deleted in its entirety and replaced with the following:

If an **Insured** has not assumed the defense of a **Claim** and does not consent to the first **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of such **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then, subject to any applicable **Limit of Liability**, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) ninety percent 90%) of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining ten percent (10%) of such covered **Loss** excess of such **Settlement Opportunity Amount** shall be carried by the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until such **Settlement Opportunity Amount** exceeds the applicable Retention set forth in Item 4. of the Declarations or to those **Claims** for which the **Insured** has assumed the defense.

ME-0091



**Endorsement 4**

NAMED INSURED: Primary Color Systems Corporation

**E7018.1 Coverage Amendatory Endorsement**                    Page 12 of 12

**Waiver of Subrogation/Recourse**

The **Subrogation** Clause of the **FLI Coverage Part** (if purchased) is deleted in its entirety and replaced with the following:

> The **Insurer** waives any rights to subrogation that it may have against the below listed **Individual Insureds**, including its recourse rights under **ERISA**, pursuant to the **Insurer's** receipt of the additional premium for such waiver paid by the **Insured** and not a **Plan**.

> Notwithstanding the foregoing, the **Insurer** shall not waive its rights to subrogation against such **Individual Insureds** arising out of a **Claim** by an **Insured** against another **Insured**, unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, assistance of or active participation by the **Insured** against whom the **Claim** is made.

> It is further provided that in the event of any recovery under this Clause, any **Limit of Liability** applicable to this **FLI Coverage Part** shall be restored to the extent of such recovery after subtracting any costs, expenses or reimbursements incurred by the **Insurer** in connection therewith.

> **INDIVIDUAL INSUREDS**

> INDIVIDUAL INSURED 1
> INDIVIDUAL INSURED 2

**Headings**

The descriptions in the headings and subheadings of this endorsement are solely for convenience and form no part of the terms and conditions of coverage.  Further, any reference to a **Coverage Part** above does not extend coverage in the event such **Coverage Part** has not been purchased.

All other terms and conditions remain unchanged.

ME-0091

Endorsement effective: 07/01/2018          Policy No.:       UVA1455136.18
Endorsement No:       4                     Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 5**

NAMED INSURED: Primary Color Systems Corporation

**E4215.1 Amend Reporting and Notice Provision Endorsement (180 Days A**     Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below. All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

**[ ]     Declarations**
**[X]     General Terms and Conditions**
**[ ]     D&O Coverage Part**
**[ ]     EPLI Coverage Part**
**[ ]     FLI Coverage Part**
**[ ]     ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

In Clause VI. **Reporting and Notice**, paragraph A. is deleted in its entirety and replaced with the following:
A.     The **Insureds** will, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** as soon as practicable, but in all events no later than 180 days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

PVT E4215 CW (02/16)

Endorsement effective: 07/01/2018          Policy No.:     UVA1455136.18
Endorsement No:          5                 Processed Date: 06/30/2018


By : Kathleen Ray
(Appointed Representative)



**Endorsement 6**

NAMED INSURED: Primary Color Systems Corporation

**E4219.1 Amend Definition of Application Endorsement (Last 12 Months)**     Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below. All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

[ ]     **Declarations**
[X]     **General Terms and Conditions**
[ ]     **D&O Coverage Part**
[ ]     **EPLI Coverage Part**
[ ]     **FLI Coverage Part**
[ ]     **ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **General Terms and Conditions** selected above is modified as follows:

In Clause II. **Definitions**, the definition of "**Application**" is deleted in its entirety and replaced with the following:

B.     **Application** means the signed application for the Policy, including any attachments and other materials or information submitted in conjunction with the signed application. The **Application** will be deemed attached to and part of this Policy. If this Policy is a renewal or replacement of a previous policy or policies issued by the **Insurer**, all signed applications and other materials that were attached to and part of those previous policies will also be considered part of the **Application** for this Policy. With respect to the **FLI Coverage Part** (if purchased), **Application** will also mean any public documents filed by the **Named Entity** or any **Subsidiary** within the last twelve (12) calendar months with any federal, state, local, or foreign regulatory agency.

PVT E4219 CW (02/16)

Endorsement effective: 07/01/2018          Policy No.:      UVA1455136.18
Endorsement No:       6                    Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 7**

NAMED INSURED: Primary Color Systems Corporation

**E4216.1 Increase Additional Executive Limit of Liability Endorsement [D&O]**       Page 1 of 1


**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below. All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

**[X]      Declarations**
**[ ]      General Terms and Conditions**
**[X]      D&O Coverage Part**
**[ ]      EPLI Coverage Part**
**[ ]      FLI Coverage Part**
**[ ]      ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

I.      In the Declarations, Item 6(c) is amended to the following:
        **Additional Executive Limit of L**iability:      $1,000,000
II.     In Clause V. **Limits of Liability** of the **D&O Coverage Part**, the first paragraph in the section titled, "**Additional Executive Limit of Liability**" is deleted in its entirety and replaced with the following:
        The **Additional Executive Limit of Liability**, if purchased as set forth in Item 6(c) of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy), will be an additional **Limit of Liability** in an amount not to exceed $1,000,000 which amount is in addition to, and not part of, the **Coverage Part Limit of Liability** applicable to this **D&O Coverage Part** as set forth in the Declarations ("**Additional Executive Limit of Liability**").

All other terms and conditions remain unchanged.


Endorsement effective: 07/01/2018          Policy No.:       UVA1455136.18
Endorsement No:      7                      Processed Date:06/30/2018


By : Kathleen Ray
(Appointed Representative)



**Endorsement 8**

NAMED INSURED: Primary Color Systems Corporation

**E3958.2 Extradition Costs Coverage Endorsement [D&O]**                    Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

**[ ]       Declarations**
**[ ]       General Terms and Conditions**
**[X]      D&O Coverage Part**
**[ ]       EPLI Coverage Part**
**[ ]       FLI Coverage Part**
**[ ]       ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **D&O Coverage Part** is modified as follows:

I.      The following is added to the end of Clause I. **Insuring Agreements**:
        This **D&O Coverage Part** will pay the **Extradition Costs** for an **Extradition Action** first made during the **Policy Period**.

II.     Solely with respect to the Coverage as provided in paragraph I. above, the following is added to the definition of "**Claim**" in the **Definitions** Clause:
        **Claim** will also mean **Extradition Action**.

III.    Solely with respect to the Coverage as provided in paragraph I. above, the following is added to the end of the definition of "**Defense Costs**" in the **Definitions** Clause:
        **Defense Costs** will also mean **Extradition Costs**.

IV.     Solely with respect to the Coverage as provided in paragraph I. above, the following is added to the end of the **Definitions** Clause:

        EC-A.    **Extradition Action** means any official request from one nation or state to another for the surrender of an **Executive** to face criminal charges for **Wrongful Acts** committed in such **Executive's** capacity as an **Executive**.

        EC-B.    **Extradition Costs** means the reasonable and necessary fees, costs, and expenses consented to by the **Insurer** to:
                 a.      oppose, challenge, resist, or defend an **Extradition Action**; or
                 b.      appeal any order or grant arising from an **Extradition Action**.

V.      Notwithstanding anything in the Policy to the contrary, the **Insurer** will not be liable to pay any **Loss** arising from an **Extradition Action** other than **Extradition Costs**, which will be part of, and not in addition to, any applicable **Limit of Liability**.


All other terms and conditions remain unchanged.

PVT E3958 CW (02/16)



Endorsement effective: 07/01/2018          Policy No.:        UVA1455136.18
Endorsement No:          8                 Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 9**

NAMED INSURED: Primary Color Systems Corporation

**E4222.1 TCPA Defense Costs Endorsement [D&O]**                    Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below. All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

**[ ]        Declarations**
**[ ]        General Terms and Conditions**
**[X]        D&O Coverage Part**
**[ ]        EPLI Coverage Part**
**[ ]        FLI Coverage Part**
**[ ]        ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

I.      The following exclusion is added to the end of Clause IV. **Exclusions**:
        TC-      for violation(s) of the Telephone Consumer Protection Act, as may be amended, or any
        A.        similar federal, state, or local statutes, ordinances, or regulations; provided, however,
                  this Exclusion will not apply to **Defense Costs** incurred to defend such **Claims**, subject
                  to the **TCPA Defense Sublimit** identified in Section III of this Endorsement;

II.     In Clause IV. **Exclusions**, part (iv) of Exclusion Q. is deleted in its entirety and replaced with the
        following:
        (iv)     for injury resulting from libel, slander, oral or written publication of defamatory or
                 disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false
                 imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery,
                 or loss of consortium; provided, however, this Exclusion will not apply to **Defense Costs**
                 incurred in connection with a **Claim** for violation of the Telephone Consumer Protection
                 Act, as may be amended, or any similar federal, state, or local statutes, ordinances, or
                 regulations, subject to the **TCPA Defense Sublimit** identified in Section III of this
                 Endorsement;

III.    **TCPA Defense Sublimit**:      $50,000 in the aggregate for all **Defense Costs** incurred in
                                         connection with any **Claims** for violation of the Telephone
                                         Consumer Protection Act, as may be amended, or any similar
                                         federal, state, or local statutes, ordinances, or regulations. The
                                         **TCPA Defense Sublimit** will be part of, and not in addition to, any
                                         applicable **Limit of Liability** under this **D&O Coverage Part**.

PVT E4222 CW (02/16)



Endorsement effective: 07/01/2018          Policy No.:          UVA1455136.18
Endorsement No:          9                 Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 10**

NAMED INSURED: Primary Color Systems Corporation

**E4221.1 WARN Act Defense Costs Endorsement**                              Page 1 of 2

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below. All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

| | |
|---|---|
| **[ ]** | **Declarations** |
| **[ ]** | **General Terms and Conditions** |
| **[X]** | **D&O Coverage Part** |
| **[X]** | **EPLI Coverage Part** |
| **[ ]** | **FLI Coverage Part** |
| **[ ]** | **ELAW Coverage Part** |

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

I.  In Clause IV. **Exclusions** of the **D&O Coverage Part**, Paragraph L. is deleted in its entirety and replaced with the following:

L.  for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law;

provided, however, this Exclusion will not apply to **Defense Costs** incurred in connection with a **Claim** alleging violation(s) of any of the responsibilities, obligations or duties imposed by the Worker Adjustment and Retraining Notification Act, subject to a sublimit of liability of $100,000, which sublimit will be part of, and not in addition to, any applicable **Limit of Liability**;

II. In Clause III. **Exclusions** of the **EPLI Coverage Part**, Paragraph G. is deleted in its entirety and replaced with the following:

G.  for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this Exclusion will not apply to:

(i)   the portion of a **Claim** attributable to **Retaliation**; or

(ii)  **Defense Costs** incurred in connection with a **Claim** alleging violation(s) of any of the responsibilities, obligations or duties imposed by the Worker Adjustment and Retraining Notification Act, subject to a sublimit of liability of $100,000, which sublimit will be part of, and not in addition to, any applicable **Limit of Liability**;



**Endorsement 10**

NAMED INSURED: Primary Color Systems Corporation

**E4221.1 WARN Act Defense Costs Endorsement**                    Page 2 of 2

III.   The maximum limit of the **Insurer's** liability for all **Defense Costs** incurred in connection with a
       **Claim** alleging violation(s) of any of the responsibilities, obligations or duties imposed by the
       Worker Adjustment and Retraining Notification Act, in the aggregate, will be $100,000, regardless
       of the Coverage Part under which the **Claim(s)** arises. Such sublimit will be part of, and not in
       addition to, any applicable **Limit of Liability**.

PVT E4221 CW (02/16)

Endorsement effective: 07/01/2018          Policy No.:       UVA1455136.18
Endorsement No:        10                   Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 11**

NAMED INSURED: Primary Color Systems Corporation

**E3959.2 Immigration Proceeding Coverage [D&O]**                    Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

[  ]        **Declarations**
[  ]        **General Terms and Conditions**
[X]        **D&O Coverage Part**
[  ]        **EPLI Coverage Part**
[  ]        **FLI Coverage Part**
[  ]        **ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **D&O Coverage Part** selected above is modified as follows:

I.      The following is added to the end of Clause I. **Insuring Agreements**:
        <u>**Immigration Proceeding Coverage**</u>
        This **D&O Coverage Part** will pay a maximum of $100,000 for **Defense Costs** arising from an **Immigration Proceeding** first made during the **Policy Period**.
II.     Solely with respect to the coverage as provided in Section I of this Endorsement, in Clause II.
        **Definitions**, the following is added to the end of the definition of "**Claim**":
        **Claim** will also mean an **Immigration Proceeding**.
III.    Solely with respect to the coverage as provided in Section I of this Endorsement, Clause II.
        **Definitions** is amended to include the following at the end thereof:
        IP-A.    **Immigration Proceeding** means a criminal investigation of any **Insured** by a governmental agency alleging a violation of the Immigration Reform and Control Act of 1986, as amended, including any similar federal, state, or local law relating to the hiring or harboring of illegal aliens.
IV.     Notwithstanding anything in the Policy to the contrary, the **Insurer** will not be liable to pay any **Loss** other than **Defense Costs** in connection with an **Immigration Proceeding**, which will be a part of, and not in addition to, any applicable **Limit of Liability**.

All other terms and conditions remain unchanged.

PVT E3959 CW (06/15)



Endorsement effective: 07/01/2018          Policy No.:        UVA1455136.18
Endorsement No:        11                   Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 12**

NAMED INSURED: Primary Color Systems Corporation

**E4213.1 Retention Reduction Incentive Endorsement (90/10) [EPLI]**          Page 1 of 3

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

**[ ]          Declarations**
**[X]          General Terms and Conditions**
**[ ]          D&O Coverage Part**
**[X]          EPLI Coverage Part**
**[ ]          FLI Coverage Part**
**[ ]          ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

I.      In Clause I. **Insuring Agreement** of the **EPLI Coverage Part** , the paragraph titled "**Defense Provision**" is deleted in its entirety and replaced with the following:
**Defense Provision**
In accordance with the **Defense Costs, Defense Counsel, Settlements & Judgments** Clause of this **EPLI Coverage Part**, the **Insurer** will have the right and duty to defend any **Claim** against an **Insured** alleging a **Wrongful Act**, even if such **Claim** is groundless, false or fraudulent; provided, however, the **Insured** may at its sole option assume the defense of a **Claim** for which coverage is provided by this **Coverage Part**.

II.     Clause V. **Defense Costs, Defense Counsel, Settlements & Judgments** of the **EPLI Coverage Part** is deleted in its entirety and replaced with the following:
**Defense**
Except as hereinafter stated, the **Insurer** will have both the right and duty to defend any **Claim** against an **Insured** alleging a **Wrongful Act**, even if such **Claim** is groundless, false or fraudulent. The **Insurer** will have the right to select and appoint the law firm identified below to defend the **Insured** against a covered **Claim**. However, the **Insured** will have the right to effectively associate with the **Insurer** in the defense of any **Claim**, including, but not limited to, negotiating a settlement, subject to the provisions of this Clause. Billing rates for the law firm identified below will not exceed the agreed upon rates.
Littler Mendelson



**Endorsement 12**

NAMED INSURED: Primary Color Systems Corporation

**E4213.1 Retention Reduction Incentive Endorsement (90/10) [EPLI]**          Page 2 of 3

**Insured's Option to Assume Defense**
Notwithstanding the above, the **Insureds** will have the right to assume the defense of any **Claim** made against them. This right will be exercised in writing by the **Named Entity** on the behalf of all **Insureds** within thirty (30) days of the reporting of the **Claim** to the **Insurer** pursuant to Clause VI. of the **General Terms and Conditions**. Upon receipt of such written request, the **Insurer** will tender the defense of the **Claim** to the **Insureds** and the **Insurer** cannot re-assume the defense of the **Claim**.  The **Insurer** will have the right to effectively associate with the **Insureds** in the defense of any **Claim**, including, but not limited to, negotiating a settlement and approving the selection of defense counsel. Provided that the **Insurer** will be permitted to effectively associate with the **Insureds** in the defense of any **Claim**, including, but not limited to, negotiating a settlement of any **Claim** and approving the selection of defense counsel, the **Insurer**'s consent to settlements, stipulated judgments and **Defense Costs** will not be unreasonably withheld.

**General Provisions**
The **Insurer** will advance **Defense Costs** on behalf of the **Insured** prior to the final disposition of a **Claim**, subject to the other provisions of this **EPLI Coverage Part**.  Such advance payments by the **Insurer** will be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that the **Insureds** will not be entitled to payment of such **Loss** under the terms and conditions of this **EPLI Coverage Part**.

The **Insureds** will not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, incur any **Defense Costs**, or retain any defense counsel without the prior written consent of the **Insurer**.  Only those settlements, stipulated judgments, and **Defense Costs** which have been consented to in writing by the **Insurer** will be recoverable as **Loss** under the terms of this **EPLI Coverage Part**.



**Endorsement 12**

NAMED INSURED: Primary Color Systems Corporation

**E4213.1 Retention Reduction Incentive Endorsement (90/10) [EPLI]**          Page 3 of 3

> If an **Insured** has not assumed the defense of a **Claim** and does not consent to the first **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of such **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then, subject to any applicable **Limit of Liability**, the **Insurer's** liability for all **Loss** on account of such **Claim** will not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) ninety percent (90%) of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining ten percent (10%) of such covered **Loss** excess of such **Settlement Opportunity Amount** will be carried by the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph will not apply until such **Settlement Opportunity Amount** exceeds the applicable Retention set forth in Item 4. of the Declarations or to those **Claims** for which the **Insured** has assumed the defense.
> The **Insureds** will give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require.

III. The following is added to the end of Clause V. **Retention** of the **General Terms and Conditions**:

> The Retention will be reduced by 20% for any **Claim** for which the **Insured** does not exercise its option to assume the defense.

PVT E4213 CW (02/16)

Endorsement effective: 07/01/2018          Policy No.:      UVA1455136.18
Endorsement No:        12                  Processed Date: 06/30/2018

*Kathleen Ray*

By : Kathleen Ray
(Appointed Representative)



**Endorsement 13**

NAMED INSURED: Primary Color Systems Corporation

**E4211.1 Add Defense-Only Coverage for Settlor Liability Endorsement**       Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

**[ ]      Declarations**
**[ ]      General Terms and Conditions**
**[ ]      D&O Coverage Part**
**[ ]      EPLI Coverage Part**
**[X]      FLI Coverage Part**
**[ ]      ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **FLI Coverage Part** selected above is modified as follows:

I.    In Clause II. **Definitions**, subparagraph (iii) of the definition of "**Plan**" is deleted in its entirety and replaced with the following:
(iii)   any other plan or program otherwise described in subparagraphs (i) or (ii) of this Definition
)       while such plan or program is being actively developed, formed, or proposed by a **Company** prior to the formal creation of such plan or program; and
II.   In Clause II. **Definitions**, the following is added to the end of the definition of "**Wrongful Act**": **Wrongful Act** also means any act, error, or omission in an **Insured's** capacity as a settlor, but only with respect to a **Plan**.
III.  The **Insurer** will not be liable to make any payment of **Loss** other than **Defense Costs** in connection with any **Claim** alleging a **Wrongful Act** in an **Insured's** capacity as a settlor as described in Section II of this Endorsement.
All other terms and conditions remain unchanged.

PVT E4211 CW (12/15)

Endorsement effective: 07/01/2018        Policy No.:      UVA1455136.18
Endorsement No:       13                 Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 14**

NAMED INSURED: Primary Color Systems Corporation

**E4218.1 Increase Voluntary Compliance Limit of Liability Endorsement**          Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below. All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

[X]     **Declarations**
[ ]     **General Terms and Conditions**
[ ]     **D&O Coverage Part**
[ ]     **EPLI Coverage Part**
[X]     **FLI Coverage Part**
[ ]     **ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

In the Declarations, Item 6(d). **Voluntary Compliance Loss Limit of Liability** is deleted in its entirety and replaced with the following:
6(d).    **Voluntary Compliance**          $250,000
            **Loss Limit of Liability**

PVT E4218 CW (02/16)

Endorsement effective: 07/01/2018          Policy No.:      UVA1455136.18
Endorsement No:        14                  Processed Date: 06/30/2018

By : Kathleen Ray
(Appointed Representative)



**<u>Endorsement 15</u>**

NAMED INSURED: Primary Color Systems Corporation

**<u>E4217.1 Increase HIPAA Sublimit Endorsement [FLI]</u>**                    Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below. All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

[ ]     **Declarations**
[ ]     **General Terms and Conditions**
[ ]     **D&O Coverage Part**
[ ]     **EPLI Coverage Part**
[X]     **FLI Coverage Part**
[ ]     **ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **FLI Coverage Part** selected above is modified as follows:

In Clause V. **Limits of Liability**, the provision entitled "**HIPAA Penalties Sublimit of Liability**" is deleted in its entirety and replaced with the following:
**HIPAA Penalties Sublimit of Liability**
The maximum limit of the **Insurer's** liability for all **HIPAA Penalties** in the aggregate will be $100,000 ("**HIPAA Penalties Sublimit of Liability**"). The **HIPAA Penalties Sublimit of Liability** will be part of, and not in addition to, the **Coverage Part Limit of Liability** applicable to this **FLI Coverage Part** as set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

All other terms and conditions remain unchanged.

PVT E4217 CW (02/16)

Endorsement effective: 07/01/2018          Policy No.:      UVA1455136.18
Endorsement No:          15                Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



## Endorsement 16

NAMED INSURED: Primary Color Systems Corporation

**E4220.1 Specific Civil Money Penalties Sublimit Endorsement [FLI]**         Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below. All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

| | |
|---|---|
| [ ] | **Declarations** |
| [ ] | **General Terms and Conditions** |
| [ ] | **D&O Coverage Part** |
| [ ] | **EPLI Coverage Part** |
| [X] | **FLI Coverage Part** |
| [ ] | **ELAW Coverage Part** |

In consideration of the premium charged, it is understood and agreed that the **FLI Coverage Part** selected above is modified as follows:

The following is added to the end of Clause II. **Definitions** in the definition of "**Loss**":
**Loss** also means the civil penalties imposed upon an **Insured** in connection with a covered **Claim** under the following legislations, all as may be amended:

(i)    Section 502(c) of the Employee Retirement Income Security Act of 1974, provided, however, such civil penalties will be subject to a sublimit of $100,000 in the aggregate, which sublimit will be part of, and not in addition to, the **FLI Coverage Part Limit of Liability**;

(ii)   the Pension Protection Act of 2006; provided, however, such civil penalties will be subject to a sublimit of $100,000 in the aggregate, which sublimit will be part of, and not in addition to, the **FLI Coverage Part Limit of Liability**; or

(iii)  26 U.S. Code § 4975; provided, however, such civil penalties will be subject to a sublimit of $100,000 in the aggregate, which sublimit will be part of, and not in addition to, the **FLI Coverage Part Limit of Liability**.

All other terms and conditions remain unchanged.

PVT E4220 CW (02/16)

Endorsement effective: 07/01/2018          Policy No.:       UVA1455136.18
Endorsement No:        16                   Processed Date: 06/30/2018

By : Kathleen Ray
(Appointed Representative)



## <u>Endorsement 17</u>

NAMED INSURED: Primary Color Systems Corporation

<u>**E3822.1 Nuclear Energy Exclusion**</u>                                    Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

**\_\_\_     Declarations**
**\_\_\_     General Terms and Conditions**
**\_X\_     D&O Coverage Part**
**\_\_\_     EPLI Coverage Part**
**\_\_\_     FLI Coverage Part**
**\_\_\_     ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

1.  The **EXCLUSIONS** Clause is amended to include the following exclusion at the end thereof:

    The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

    NE-A.     alleging, arising out of, based upon or attributable to any hazardous properties of any nuclear material, including source material, special nuclear material or byproduct material;

    NE-B.     which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or

    NE-C.     with respect to which:

        (i)     any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

        (ii)     the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

All other terms and conditions remain unchanged.



Endorsement effective: 07/01/2018          Policy No.:        UVA1455136.18
Endorsement No:        17                   Processed Date:06/30/2018

By : Kathleen Ray
(Appointed Representative)



**Endorsement 18**

NAMED INSURED: Primary Color Systems Corporation

**E3969.1 Wage & Hour Claim Sublimit - Defense Only Endorsement**          Page 1 of 3

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

**[ ]      Declarations**
**[ ]      General Terms and Conditions**
**[ ]      D&O Coverage Part**
**[X]      EPLI Coverage Part**
**[ ]      FLI Coverage Part**
**[ ]      ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **EPLI Coverage Part** selected above is modified as follows:

I.      In Clause III. **Exclusions**, Paragraphs G., H., and I. are deleted in their entirety and replaced with the following:

G.      alleging, arising out of, based upon or attributable to any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act  (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this Exclusion will not apply to:

(i)      the portion of a **Claim** attributable to **Retaliation**; or

(ii)      **Defense Costs** incurred in connection with such **Claim**, subject to the **Wage and Hour Sublimit of Liability** described in Section II. of this Endorsement.

This Exclusion will apply to any **Claim** alleging any such responsibilities, obligations, or duties, even if the **Claim** contains other allegations asserted against the **Insured**, if the additional allegations are based on the same facts, circumstances, situation, event, transaction, or cause as the **Claim** alleging such responsibilities, obligations, or duties imposed by the legislation, regulations, rules, or other laws identified above.

PVT E3969 CW (05/15)



**Endorsement 18**

NAMED INSURED: Primary Color Systems Corporation

**E3969.1 Wage & Hour Claim Sublimit - Defense Only Endorsement**            Page 2 of 3

H.   alleging, arising out of, based upon or attributable to:

    (i)   the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered (other than tort-based back pay or front pay damages for non-conversion related torts);

    (ii)   improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**; or

    (iii)   failure to provide or enforce legally required meal or rest break periods;

    provided, however, this Exclusion will not apply to:

    (i)   the portion of a **Claim** attributable to **Retaliation**; or

    (ii)   **Defense Costs** incurred in connection with such **Claim**, subject to the **Wage and Hour Sublimit of Liability** described in Section II. of this Endorsement.

    This Exclusion will apply to any **Claim** alleging such refusal, failure, inability, or improper deduction, even if the **Claim** contains other allegations asserted against the **Insured**, if the additional allegations are based on the same facts, circumstances, situation, event, transaction, or cause as the **Claim** alleging such refusal, failure, inability, or improper deduction as described above.

I.   alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, this Exclusion will not apply to:

    (i)   the portion of a **Claim** attributable to **Retaliation**; or

    (ii)   **Defense Costs** incurred in connection with such **Claim**, subject to the **Wage and Hour Sublimit of Liability** described in Section II. of this Endorsement.

PVT E3969 CW (05/15)



**Endorsement 18**

NAMED INSURED: Primary Color Systems Corporation

**E3969.1 Wage & Hour Claim Sublimit - Defense Only Endorsement**          Page 3 of 3

> This Exclusion will apply to any **Claim** alleging any such obligation, even if the **Claim** contains other allegations asserted against the **Insured**, if the additional allegations are based on the same facts, circumstances, situation, event, transaction, or cause as the **Claim** alleging any such obligation pursuant to any of the laws identified above.

II.   The maximum limit of the **Insurer's** liability for all **Defense Costs** incurred in connection with any **Claim** containing any of the allegations set forth in Clause III. **Exclusions**, Paragraphs G., H., or I. of this **EPLI Coverage Part** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, will be $100,000 ("**Wage and Hour Sublimit of Liability**"). The **Wage and Hour Sublimit of Liability** will be the maximum limit of the **Insurer** under this **EPLI Coverage Part** regardless of the number of such **Claims** occurring during the **Policy Period** or the **Discovery Period** (if applicable); and the **Wage and Hour Sublimit of Liability** will be part of, and not in addition to, the **Coverage Part Limit of Liability**.

All other terms and conditions remain unchanged.

PVT E3969 CW (05/15)

Endorsement effective: 07/01/2018          Policy No.:        UVA1455136.18
Endorsement No:          18                Processed Date: 06/30/2018

By : Kathleen Ray
(Appointed Representative)