# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| PRIMARY COLOR SYSTEMS CORPORATION, | Case No.: SACV 22-02029-CJC (JDEx) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(b)(6) [Dkt. 12]** |
| HISCOX INSURANCE COMPANY, INC., | |
| Defendant. | |

## I.    INTRODUCTION

On July 14, 2021, Plaintiff Primary Color Systems Corporation initiated this suit against Defendant Hiscox Insurance Company, Inc., bringing claims for declaratory relief on Hiscox's duty to indemnify under an insurance policy, breach of contract, and breach of the implied covenant of good faith and fair dealing.  (*See* Dkt. 1 [Complaint, hereinafter "Compl."].)  Now before the Court is Hiscox's motion to dismiss the

complaint under Federal Rule of Civil Procedure 12(b)(6).  (*See* Dkt. 12 [Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(b)(6); Memorandum of Points and Authorities, hereinafter "Mot."].)  For the following reasons, the motion is **GRANTED**.[1, 2]

## II.    BACKGROUND

As alleged in the complaint, Vincent Randazzo filed a complaint against Primary Color, his former employer, in the Superior Court of California, County of Los Angeles, for breach of an employment agreement, recovery of unpaid wages, and fraud.  (*See* Compl. ¶¶ 17–18, 22.)  Randazzo alleged that he used to work for Primary Color as its chief performance officer and, later, its chief financial officer and chief executive officer. (*See id.* ¶ 19.)  After Randazzo began considering employment elsewhere, Primary Color offered him an equity stake in the company, which he accepted.  (*See id.*)  He continued his employment for six years, and when he demanded his equity upon resignation, Primary Color disavowed ever offering the equity.  (*See id.*)

On September 11, 2018, Primary Color tendered Randazzo's written demand of Primary Color and his draft complaint to Hiscox, which had previously issued a Private Company Management Liability Insurance Policy to Primary Color.  (*See id.* ¶¶ 10, 29.) Pertinent here, the Employment Practice Liability Coverage Part ("EPLCP") of the policy covered a variety of types of "Employment Practices Violation[s]," "whether committed

---

[1]  Having read and considered the papers that the parties presented, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for February 13, 2023, at is hereby vacated and removed from the calendar.

[2]  Primary Color filed a motion for partial summary judgment in its favor and against Hiscox on the same set of issues.  (*See* Dkt. 15 [Plaintiff's Notice of Motion for Partial Summary Judgment].)  Since the motion to dismiss is granted and, as explained below, leave to amend the complaint is denied, Primary Color's motion is also **DENIED**.

directly, indirectly, intentionally or unintentionally," including "employment-related misrepresentation(s)." (*See* Dkt. 1-1 [Private Company Management Liability Insurance Policy, hereinafter "Agmt."] PVT P003 CW § II.D.)  The EPLCP also excluded from coverage, however, any claim "arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act was committed." (*Id.* § III.A.)  Hiscox agreed to advance defense costs to Primary Color under the policy subject to a reservation of rights based on this exclusion.  (*See* Compl. ¶¶ 30–32.)

After Randazzo's claim against Primary Color was filed, the matter went to binding arbitration, and the arbitrator ruled for Randazzo on the fraud claim.  (*See id.* ¶¶ 21, 23.)  The arbitrator concluded as follows:

> The evidence is clear that in 2012, Randazzo was threatening to leave Primary Color, and in order to prevent him from doing so, Primary Color, through its shareholders and directors, made certain representations to him about his receiving an "equity interest" in Primary Color with the intent to induce him to stay, which he did.  The evidence also clearly indicates that Primary Color never intended to give him any "equity" in the company, in fact the shareholders and directors "laughed at the idea", [sic] according to the testimony of both Daniel [who was the president of Primary Color] and Michael Hirt [who was a shareholder and member of the board of directors].

(Dkt. 1-3 [Arbitrator's Initial Award, hereinafter "Arbitration"] at 6.)

The arbitrator noted that "[t]here was amble [sic] evidence during the hearing, both from Daniel Hirt and Michael Hirt that they both thought Randazzo's request or demand for equity in Primary Color was 'laughable' and something they would never agree to" but that "they had lead [sic] Randazzo to believe they were going to give him 'equity' in Primary Color in order to keep him from leaving in 2012." (*Id.* at 4.)  Among the evidence that the arbitrator discussed were corporate minutes from an April 2012 meeting

that stated, "Finalize equity percentage for Vincent (between 10% -25%)," "a draft of a 'Supplemental Employment Agreement' between Primary Color and Randazzo talking about a Stock Option," and emails discussing a grant of equity.  (*Id.* at 3–4.)

Randazzo subsequently filed an unopposed motion to confirm the arbitration award, which the California Superior Court granted.  (*See* Dkt. 12-2 [Defendant's Request for Judicial Notice in Support of Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(b)(6)] Ex. B.)[3]  Primary Color demanded that Hiscox indemnify it for the award.   (*See* Compl. ¶ 33.) Hiscox refused, stating that there was no coverage under the policy.  (*See id.* ¶ 34.)  That refusal resulted in Primary Color bringing the present suit for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing.  (*See id.* at 8–11.)

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claims.  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims" asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  Rule 12(b)(6) is read in conjunction with Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).  When evaluating a Rule 12(b)(6) motion, a district court must accept all material "allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party."  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).  To survive a motion to dismiss, a complaint must contain sufficient

---

[3]  Primary Color does not oppose the request for judicial notice of the California Superior Court order granting the motion to confirm the arbitration award.  The request is, therefore, **GRANTED**.

factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain "well-pleaded factual allegations," not just "legal conclusions," that "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In keeping with this liberal pleading standard, a district court should grant a plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## IV.   DISCUSSION

### A.   Declaratory Relief on the Duty to Indemnify

Hiscox asserts two reasons why Primary Color's claim for declaratory relief on Hiscox's duty to indemnify for the arbitration award on Randazzo's fraud claim fails. First, Hiscox argues that California statutorily precludes an insurer from indemnifying an insured for willful wrongdoing, including fraud. (*See* Mot. at 17–19.) Second, Hiscox argues that the policy exclusion for any "deliberate fraudulent act" applies to the arbitrator's award. (*See id.* at 14–17.) Hiscox is correct on both grounds.

#### 1.   Statutory Preclusion of Indemnification

Under Section 533 of the California Insurance Code, "[a]n insurer is not liable for a loss caused by the wilful [sic] act of the insured; but [the insurer] is not exonerated by the negligence of the insured, or of the insured's agents or others." Cal. Ins. Code § 533. "Section 533 reflects a fundamental public policy of denying coverage for willful wrongs." *J. C. Penney Cas. Ins. Co. v. M. K.*, 804 P.2d 689, 694 n.8 (Cal. 1991) (in bank). "It is an implied exclusionary clause which, by statute, must be read into all

insurance policies." *Downey Venture v. LMI Ins. Co.*, 78 Cal. Rptr. 2d 142, 154 (Cal. Ct. App. 1998).

"A wilful act . . . means something more than the intentional doing of an act constituting ordinary negligence or the violation of a statute." *Id.* at 155. But the statute precludes coverage without "a showing by the insurer of its insured's 'preconceived design to inflict harm' when the insured seeks coverage for an intentional and wrongful act if the harm is inherent in the act itself." *J. C. Penney*, 804 P.2d at 698. Thus, an uninsurable willful act includes:

> (1) an act done with intent to injure, *i.e.*, an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damages were highly probable or substantially certain to result, [and] (2) an act [that is] inherently harmful, *i.e.*, an intentional wrongful act in which the harm is inherent in the act itself.

*Seneca Ins. Co., Inc. v. Cybernet Entertainment, LLC*, 760 F. App'x 541, 544 (alteration in original) (quoting *Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 46 Cal. Rptr. 3d 517, 532–33 (2006)); *see also Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1112 (9th Cir. 2006).

The fraud cause of action clearly qualifies as an uninsurable willful act. "The elements of a fraud or intentional misrepresentation claim are: (1) misrepresentation, (2) knowledge of falsity, (3) *intent to defraud or induce reliance*, (4) justifiable reliance, and (5) damage." *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 574 (9th Cir. 2022) (emphasis added). A fraud claim thus necessarily involves "an act done with intent to injure, *i.e.*, an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damages were highly probable or substantially certain to result." *Seneca Ins.*, 760 F. App'x at 544 (quoting *Ortega Rock Quarry*, 46 Cal. Rptr. 3d at 532). In short, there are no two ways about it: "California

law prohibits indemnification for intentionally harmful conduct such as fraud." *Spa De Soleil, Inc. v. Gen. Star Indem. Co.*, 787 F. Supp .2d 1091, 1098 (C.D. Cal. 2011); *see also Seneca Ins.*, 760 F. App'x at 545 (concluding that claims for "intentional/fraudulent misrepresentation and conspiracy to commit fraud" regarding "representations concerning the safety of [pornographic shoots] . . . to induce [plaintiffs] to participate in those shoots" were uninsurable); *Cal. Amplifier, Inc. v. RLI Ins. Co.*, 113 Cal. Rptr. 2d 915, 926–27 (Cal. Ct. App. 2001) (concluding that conduct necessary for securities fraud liability under California law was uninsurable).  Section 355 thus bars indemnification for the arbitrator's award on Randazzo's fraud claim.

## 2.    Contractual Exclusion of Indemnification

The ordinary rules of contract interpretation apply to insurance policies.  *See Bank of the W. v. Superior Ct.*, 833 P.2d 545, 551 (Cal. 1992).  "[C]ourt[s] must interpret the language in context, with regard to its intended function in the policy."  *Id.* at 552.  "[P]olicy terms must be read in their 'ordinary and popular sense,'" and "[i]f [the] language is clear and explicit, it governs."  *Id.*  "If the terms are ambiguous"—that is, they are "susceptible of more than one reasonable interpretation"—courts are to "interpret them to protect the objectively reasonable expectations of the insured." *Minkler v. Safeco Ins. Co. of Am.*, 232 P.3d 612, 616 (Cal. 2010) (cleaned up).  But "[o]nly if these rules do not resolve a claimed ambiguity do [courts] resort to the rule that ambiguities are to be resolved against the insurer."  *Id.*  When this "'tie-breaker' rule of construction against the insurer" applies, "basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer."  *Id.*

The policy here unambiguously excludes indemnification for Randazzo's fraud claim.  The policy provided that Hiscox would not be liable to pay for any claim "arising

out of, based upon or attributable to the committing of any deliberate criminal or *deliberate fraudulent act* if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act was committed." (Agmt. PVT P003 CW § III.A [emphasis added].)  "[A]s to Randazzo's Cause of Action for Fraud," (Arbitration at 6), which had as an element the "intent to defraud or induce reliance," *Moreno*, 29 F.4th at 574, the arbitrator found "that Randazzo . . . met his burden of proof in that regard and [wa]s entitled to an award," (Arbitration at 6).  The arbitrator further found that Primary Color "made certain representations to [Randazzo] about his receiving an 'equity interest' in Primary Color with the intent to induce him to stay" despite "never intend[ing] to give him any 'equity' in the company" and that the company's agents in fact "laughed at the idea." (*Id.*)  Thus, the arbitrator's ruling necessarily falls within the plain meaning of the exclusion for any "deliberate fraudulent act."[4]  And if there were any doubt, it is resolved by the general interpretive rule that "[a] policy clause excluding intentional injury, such as the one" at issue here, generally "is treated as having the same meaning as the language in Insurance Code section 533."  *Delgado v. Interinsurance Exch. of Auto. Club of S. Cal.*, 211 P.3d 1083, 1090 (Cal. 2009).

Primary Color's arguments to the contrary are unavailing.  It says that "'deliberate' . . . can only reasonably be understood as limiting the exclusion to fraud with a greater level of scienter or more egregious conduct than an ordinary fraud claim for 'intentional misrepresentation,'" (Dkt. 21 [Primary Color Systems Corporation's Opposition to Hiscox Insurance Company, Inc.'s Motion to Dismiss, hereinafter "Opp."] at 1), and "[t]he Arbitration Award is devoid of facts that Primary Color committed a 'deliberate fraudulent act' with a heightened, preconceived intent," (*id.* at 7).  But Primary Color

---

[4]  "Fraudulent" means "characterized by, based on, or done by fraud," Fraudulent, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/fraudulent (last visited February 1, 2023), and "fraud" means "intentional perversion of truth in order to induce another to part with something of value or to surrender a legal right" or "an act of deceiving or misrepresenting," Fraud, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/fraud (last visited February 1, 2023).

cites no authority for so interpreting "deliberate," and that interpretation runs counter to the word's ordinary meaning—"characterized by awareness of the consequences." Deliberate, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/deliberate (last visited February 1, 2023).  Indeed, since "deliberate" and "intentional" are synonyms, *see id.*, the language appears designed to clarify which claims are within the exclusion—namely, to distinguish between "[i]ntentional and negligent misrepresentations," which "are both actionable forms of fraud."  *Conte v. Wyeth, Inc.*, 85 Cal. Rptr. 3d 299, 310 n.7 (Cal. Ct. App. 2008); *see also Randi W. v. Muroc Joint Unified Sch. Dist.*, 929 P.2d 582, 589 (Cal. 1997) ("[S]tandard business liability insurance is available to cover instances of negligent misrepresentation . . . , but is not available for [ ] fraud or intentional misconduct . . . ."  (emphases omitted) (citing Cal. Ins. Code. § 533)).

Primary Color then argues that since "[t]here is no basis in the Arbitration Award to conclude that the bonuses were awarded based on any specific misrepresentation," the award should not be deemed subject to the policy exclusion.  (Opp. at 8.)  But the arbitrator stated in no uncertain terms that the bonuses were awarded as part of the fraud claim, so an award for bonuses does not affect whether the arbitration award is within the policy exclusion.  (*See* Arbitration at 7 [granting "an initial award on [Randazzo's] Fraud claim . . . in the sum of $850,000.00[,] . . . $400,000.00 representing the bonuses owed to Randazzo"].)  Indeed, Primary Color acknowledges that the arbitrator "awarded Randazzo his claimed bonuses as part of the damages awarded for 'fraud.'"  (Opp. at 7.)  If Primary Color disagreed that bonuses *could* be awarded on the fraud claim, it should have raised that with the arbitrator or filed an opposition to Randazzo's motion to confirm the arbitration in the California Superior Court (which it did not).  Thus, separate and apart from Section 533, the terms of the policy do not require Hiscox to indemnify Primary Color for the arbitrator's award on Randazzo's fraud claim.

**B.     Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

Because the exclusion applies to the arbitrator's award, Primary Color's breach-of-contract claim necessarily fails. The same holds true for the claim for breach of the implied covenant of good faith and fair dealing. "[A] bad faith claim cannot be maintained unless policy benefits are due." *Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246, 256 (Cal. Ct. App. 1990). "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 639 (Cal. 1995). "Absent [a] contractual right, . . . the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'" *Id.* (citation omitted). Thus, these two claims meet the same fate as the claim for declaratory relief.

**C.     Leave to Amend**

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading with the court's leave, which should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a). The Rules reflect a liberal policy favoring amendments, so leave to amend generally should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). A court need not grant leave to amend if permitting a plaintiff to amend would be an exercise in futility. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation

omitted).  Because California Insurance Code Section 533 and the terms of the policy bar coverage for Primary Color's claims as a matter of law, leave to amend would be futile and is, therefore, not warranted.

## V.    CONCLUSION

For the foregoing reasons, Hiscox's motion to dismiss is **GRANTED**.  Primary Color's complaint is **DISMISSED WITH PREJUDICE**.

DATED:     February 1, 2023

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE